625 A.2d 682

**Regina HERA and Judith Rosenthall, Executors of the Estate of Evelyn Hill, Appellants,**

v.

**Albert R. McCORMICK, Sr., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1993.
Filed May 21, 1993.

434

436

John B. Dunn, Stroudsburg, for appellants.

Robert M. Rosenblum, Stroudsburg, for appellee.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

This is an appeal from the order entered against Regina Hera and Judith Rosenthall, executors of the Estate of Evelyn P. Hill ["appellants"], with regard to approximately $102,-038.41 in assets allegedly belonging to the estate. Appellants argue that there was insufficient evidence to support the trial court's finding that appellee Albert McCormick, Sr. ["McCormick"] had received the funds from decedent as a valid inter vivos gift. After a lengthy and careful review of the record, we agree with appellants and remand for a new trial.

McCormick was a friend of Evelyn Hill's late husband who was permitted to live in one of Hill's tenant homes. Eventually McCormick moved in with Hill and another individual, Harry Rhodes, and began helping Hill with her business and personal affairs. It is not clear from the record, however, when McCormick first took up residence with Hill and Rhodes. In the final months before her death, Hill suffered from various illnesses including stage 4 breast carcinoma for which she was receiving radiation therapy. Hill required the assistance of Home Health Services of Monroe County to maintain a functioning colostomy and meet her hygiene needs. At times she would pull off her colostomy bag, refuse to eat, and become totally uncooperative. (R.R. 363a.) She also suffered from hallucinations. McCormick assisted Hill in bathing and eating. He also took her shopping and made arrangements to obtain home health aides to assist with her care. Rhodes helped with various household chores.

Early in April of 1991, McCormick and appellant Hera took a power of attorney executed by Hill, to United Penn Bank and redeemed $30,000.00 worth of Hill's certificates of deposit ["certificates"]. The power-of-attorney was executed on March 21, 1991, and issued jointly between Hera and McCormick. McCormick used $10,000.00 of the proceeds of this transaction to purchase a car for himself, and gave $20,000.00 to Hera. (R.R. 298a–299a.) All of the subsequent transactions were performed by McCormick alone, acting as attorney-in-fact, allegedly under the authority of a power of attorney executed in his name alone. These transactions included, *inter alia*, the following.

Between May 7 and May 9, of 1991, shortly before Hill's death, McCormick redeemed four certificates from United Penn Bank: No. 2401355 in the amount of $2,173.06; No. 2401324 in the amount of $14,208.81; No. 2419302 in the amount of $10,279.62; and No. 2442293 in the amount of $16,194.08. He also withdrew $2,572.56 from one of Hill's savings accounts at the same bank. (R.R. 141a.) From Third National Bank, McCormick cashed two certificates: No. A049697 in the amount of $25,800.00 and No. A049807 in the amount of $6,500.00. (R.R. 146a–156a.) McCormick testified that the certificates were given to him some time in early February, at which time Hill stated, "I gave enough people money. You cash them." (R.R. 76a.) He later testified that Hill signed the certificates and gave them to him in the later part of April, 1991. Additionally, McCormick closed several of Hill's bank accounts and wrote checks to pay off debts for Rhodes and himself.

One of the certificates, worth $10,279.62, was signed over to a man named Mr. Davenport to pay off a $5,000.00 debt which McCormick allegedly owed. Davenport returned the balance of the proceeds from the certificate to McCormick. At the initial hearing on November 14, 1991, McCormick testified that he invested approximately $25,000.00 to $27,000.00 in proceeds from Hill's certificates with a man named Ron Soja to start a mortgage company. McCormick gave his son, Albert McCormick, Jr., a $1,000.00 draft from Hill's checking

account at First National Bank of Palmerton as a belated Christmas gift. McCormick also wrote checks against Hill's accounts to pay off additional debts and to make personal loans to his friends.[1] McCormick used another certificate to pay off Rhodes' bills since Hill allegedly did not want Rhodes to have to work anymore. (R.R. 258a.) Two certificates from Third National Bank of Stroudsburg were rolled over and reissued in McCormick's name and his son's name, Albert McCormick, Jr. (R.R. 153a.)

Hill died on May 18, 1991, at the age of 83 leaving a will dated February 27, 1991, which named appellants, Regina Hera, Hill's long-time personal friend, and Judith Rosenthall, her niece, as co-executors of her estate.[2] Appellants initiated this action against McCormick on October 29, 1991, alleging that he improperly transferred the $102,038.41 in estate assets to himself by asserting undue influence over Hill. They sought to have the assets returned to the estate. The trial court entered an order granting preliminary relief and ordering McCormick to file an accounting. (R.R. 57a–58a.) Following preliminary hearings, the court granted further relief enjoining McCormick from utilizing funds, proceeds or property, allegedly the property of Hill's estate. After a full and final hearing on May 11, 1992, however, the court determined that McCormick had received the certificates from Hill as a valid inter vivos gift and the temporary injunction was dissolved. No specific findings were made with regard to the proceeds received from Hill's checking and savings accounts. Post-trial motions were filed and denied. This timely appeal followed.

1.   McCormick testified that he wrote checks against Hill's bank accounts from First National Bank of Palmerton in the amount of $750.00 to his son and $700.00 to a Joseph McDonald on May 5, 1991; $1,254.00 to McDonald and $500.00 to Ron Soja on May 7, 1991; and $1,000.00 to his son on May 9, 1991; and $3,647.17 to pay off his debt to Regency Consumer Discount on May 15, 1991. All of these checks were signed by McCormick with the designation "POA." (R.R. 248a–253a.)

2.   Hill's will specifically bequeathed $6,000.00 to Hera, and gave the residuary of her estate to Rosenthall and Hera in equal shares. (R.R. at 20a.) Additionally, the will provided that McCormick and Rhodes could remain in her home rent free for so long as it remained unsold.

■ At the outset, we note that in reviewing a decree in equity, we are bound to accept the chancellor's findings of fact. *Volunteer Fire Company v. Hilltop Oil Company,* 412 Pa.Super. 140, 602 A.2d 1348 (1992). "The chancellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated, because he has the opportunity to hear them and observe their demeanor on the stand." *Id.* at 145, 602 A.2d at 1351. Thus, our review is limited to a determination of whether there was an error of law and whether the chancellor's factual findings are supported by sufficient evidence. *Id.*

Appellants present eight challenges to the lower court's findings, five of which are corollaries to one central issue. We have thus divided appellants' argument into three basic issues: (I) did McCormick receive a valid inter vivos gift of certain certificates of deposit, saving accounts and checking accounts from Hill; (II) did a confidential relationship exist between Hill and McCormick, shifting the burden to McCormick to prove the validity of the gifts; and, (III) should the record have been opened to admit newly discovered evidence of fraud allegedly committed by McCormick on Hill's estate. We address each issue in turn.

## I.

■ Appellants argue that the evidence did not support the lower court's finding that Hill made inter vivos gifts of her certificates and the proceeds of her checking and savings accounts to McCormick. The prerequisite elements necessary to prove a valid inter vivos gift are donative intent and delivery. *Estate of Korn,* 332 Pa.Super. 154, 480 A.2d 1233 (1984). Initially, the burden is on the alleged donee to prove a gift inter vivos by clear, precise and convincing evidence. *In re Pappas Estate,* 428 Pa. 540, 239 A.2d 298 (1968). Once prima facie evidence of a gift is established, a presumption of validity arises and the burden shifts to the contestant to rebut this presumption by clear, precise and convincing evidence. *Id.* As discussed below, a presumptively valid gift may be rebutted by establishing that donor and donee had a confiden-

tial relationship at the time the alleged gift was made. *Banko v. Malanecki*, 499 Pa. 92, 451 A.2d 1008 (1982); *In re Estate of Clark*, 467 Pa. 628, 359 A.2d 777 (1976).

## A. Delivery

■ Our resolution of this matter commences with the question of whether there was adequate delivery. An actual or constructive delivery must not only divest donor of all dominion and control over the property, but also must invest donee with complete control over the subject matter of the gift. *In re Estate of Evans*, 467 Pa. 336, 356 A.2d 778 (1976). Appellants argue that Hill never divested herself of dominion and control of the certificates, despite her endorsement and transfer to McCormick, because they were non-negotiable and non-transferable. In its second opinion, the lower court conceded (contrary to its former findings) that "[a] power of attorney is necessary because the [certificates] are payable to Evelyn Hill and not to the order of Evelyn Hill. Therefore an endorsement alone is not sufficient to complete delivery." Trial court opinion at 10; *see* 13 Pa.C.S.A. § 3104. Nevertheless, the lower court sustained the validity of the gifts since it determined that Hill gave McCormick a power of attorney designating him to act alone as attorney-in-fact ["sole power"] and effect delivery of the gifts.

■ Appellants aver that the evidence was insufficient to prove that the sole power existed or that the terms permitted McCormick's transactions. We agree. The only evidence regarding powers of attorney introduced at trial were powers issued jointly to Rosenthall and Hera and to McCormick and Hera. Since there was no designation provided in the joint power indicating whether McCormick or Hera could act separately, both signatures were clearly required to act in accordance with § 5602 of the Pennsylvania Code. Section 5602 provides:

**(b) Appointment of attorney in fact and successor attorney.** A principal may provide for:

(1) The appointment of more than one attorney-in-fact, who shall act jointly, severally or in any other combination that

the principal may designate, but if there is no such designation, such attorneys shall act jointly.

20 Pa.C.S.A. § 5602. Thus, the existence of the sole power was crucial to establishing that McCormick had access to the proceeds and could complete delivery. *Evans, supra; Brown v. Brown,* 330 Pa.Super. 324, 479 A.2d 573 (1984) (must prove actual or constructive delivery during lifetime of the donor for valid inter vivos gift).

Neither McCormick nor the three banks where the challenged transactions occurred produced documentation of the sole power at trial. Over appellants' objection, the court allowed McCormick and Eunice Weber, a branch manager of First National Bank of Palmerton, to testify regarding the sole power and its contents. Weber testified that the bank had misplaced the document and had unsuccessfully attempted to locate it. (R.R. 238a.) Weber also stated that she had personally reviewed the missing power and was certain that it designated McCormick to act alone, and authorized him to withdraw funds from Hill's bank accounts and redeem the certificates. (R.R. 229a, 238a.) Appellants objected to the admission of this testimony on the basis that there was inadequate proof of the document to satisfy the best evidence rule.

The best evidence rule provides that original writings must be produced to prove the terms of the document where they are material to the issue at hand, unless the original is shown through sufficient evidence to be unavailable through no fault of the proponent. *Warren v. Mosites Construction Co.,* 253 Pa.Super. 395, 385 A.2d 397 (1978); *Panko v. Alessi,* 362 Pa.Super. 384, 524 A.2d 930 (1987). "It is within the discretion of the trial court, based on proof of destruction, to determine whether production of the original document is feasible." *Commonwealth v. Cessna,* 371 Pa.Super. 89, 98, 537 A.2d 834, 838 (1988). Where the document cannot be produced because it is lost or destroyed, production of the original is excused and other evidence becomes admissible. *Id.* Application of the rule is limited to those situations where the contents of the document are at issue and must be proved to

make a case or provide a defense. *Hamill–Quinlan, Inc. v. Fisher*, 404 Pa.Super. 482, 591 A.2d 309 (1991); *Warren, supra.*

■ McCormick's defense is that he completed delivery of the gifts through the use of the sole power. The contents of the document are therefore clearly at issue. Absent a legitimate reason, McCormick was required to produce the original document purporting to establish the sole power. Since we find that McCormick's justification for failing to produce the original document is wholly inadequate under the accepted parameters of the best evidence rule, we must necessarily conclude that the evidence was insufficient to establish the sole power.

■ To justify the admission of secondary evidence of the contents of an allegedly lost instrument, it must be shown that a *bona fide*, diligent, and thorough search was made in places where the instrument is likely to be found. Packel & Poulin, *Pennsylvania Evidence*, § 53:14 (citing *In re Greggerson's Estate*, 344 Pa. 498, 25 A.2d 711 (1942); *Hacker v. Price*, 166 Pa.Super. 404, 71 A.2d 851 (1950)). Here, not even a copy of the power was offered to prove that McCormick was authorized to conduct all of the transactions. The branch manager from the bank who had seen the sole power testified that it is standard procedure to make a photocopy of the power and send the original to the main branch. However, the only photocopy in her files was the joint power. We also note that no effort was made to subpoena a copy of the document from Hill's former attorney, Krawitz, who drafted the joint powers, Hill's will, and who allegedly prepared the sole power.[3] Accordingly, we find that the trial court abused its discretion in allowing testimonial evidence of the sole power in the absence of an adequate justification for failure to provide even a copy of the original.

3. The trial court suggests in its opinion that appellants failed to present any evidence negating the existence of the sole power. It suggested that since appellants argued that the sole power never existed, they could have called Attorney Krawitz to prove that he did not draft the alleged document. We note that it was not appellants' burden to disprove the validity of the gifts before McCormick established his prima facie case.

Even assuming the secondary evidence of the sole power was admissible under the best evidence rule, we find the evidence presented was insufficient to prove delivery. As appellants argue, the specific terms or specific powers given by the sole power could have been very broad or limited pursuant to 20 Pa.C.S.A. §§ 5602 and 5603. There was no evidence as to whether the power authorized McCormick to make substantial gifts to himself and others. An attorney-in-fact may be specifically empowered "to make gifts" or only "to make limited gifts." 20 Pa.C.S.A. § 5602.[4] Moreover, although we do not question the trial court's credibility determination regarding the fact that Weber read the sole power sometime in early February, we find that the testimony was inadequate to prove the existence of the sole power at the time the transactions were completed. This is especially true in light of Hill's execution of two joint powers within approximately the same time period, one which revoked all former powers previously executed. There is simply no basis for finding that sole power was in effect at the time the disputed transactions were made. We will not sustain the delivery of a gift justified solely on the existence of a sole power-of-attorney, when the proof of the sole power and its contents is utterly insufficient.

## B. Donative Intent

With respect to the evidence proffered to prove Hill's donative intent, appellants argue that the court disre-

4. Section 5602 enumerates specific quoted language which may be included by a principal to authorize the attorney-in-fact to perform certain acts. Our Supreme Court has recently rejected the notion that the quoted language is required to authorize these acts. *Estate of Reifsneider*, 531 Pa. 19, 610 A.2d 958 (1992). Rather, the Court stated:

[G]eneral language *can* "show a similar intent on the part of the principal" to empower the attorney-in-fact to do one or more of the listed things if the general language, according to its common usage, would be understood as encompassing such power or powers.

*Id.* at 26, 610 A.2d at 962 (emphasis in original); *contra Reifsneider,* dissenting opinion by Nix, C.J. (specific language or "other language showing a *similar* intent" required to authorize acts enumerated in § 5602). In any event, it appears that Hill's intent to allow McCormick to make gifts would have to be apparent from the instrument.

garded the Dead Man's Rule, codified at 42 Pa.C.S.A. § 5930, in allowing McCormick to testify about his conversations with Hill regarding the gifts.[5] According to the Dead Man's Rule or Dead Man's Statute, surviving parties who have an interest which is adverse to decedent's estate are disqualified from testifying as to any transaction or event which occurred before decedent's death. *Matthew's Estate*, 431 Pa. 616, 246 A.2d 412 (1968). Where, as in this case, there is an issue regarding the validity of an inter vivos gift, the court may not admit statements of decedent absent independent testimony establishing prima facie evidence of donative intent and delivery. *Friedeman v. Kinnen*, 452 Pa. 365, 305 A.2d 3 (1973). If the alleged donee fails to establish prima facie evidence of a gift or transfer by independent testimony before he takes the stand, he is not competent to testify. *Id.* The purpose of this rule "is to prevent the injustice which would result from permitting a surviving party to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the decedent." *In re Estate of Cecchine*, 336 Pa.Super. 111, 117, 485 A.2d 454, 458 (1984).

The trial court ruled that the Dead Man's Rule did not render McCormick incompetent to testify because "prior to [McCormick's] testimony regarding the statements of the decedent, there was testimony of both donative intent and delivery." Trial court opinion at 10–11. This "independent" testimony relied on by the trial court included McCormick's own assertion that Hill signed the certificates and gave them to him, that Hill gave him a sole power, and that he cared for Hill. The trial court's reasoning in this regard reflects a

5. Section 5930 states in pertinent part:

   Except as otherwise provided in this subchapter, in any civil action of proceeding, where any party to a thing or contract in action is dead ... and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such a thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ... party, shall be a competent witness to any matter occurring before the death of the said party.

   42 Pa.C.S.A. § 5930.

misapprehension of the Dead Man's Rule. According to the Rule, "a surviving party is not permitted to testify as to *any relevant matters occurring before the decedent's death,* even though they be independent matters or facts which in no way can be regarded as transactions with, or communications by, the decedent." *Cecchine,* at 117, 485 A.2d at 458 (emphasis added). Thus, McCormick was not simply precluded from testifying in regard to Hill's alleged statements of donative intent.

Nevertheless, McCormick's testimony did not violate the Dead Man's Rule. There are a number of exceptions to the Rule, both statutory and at common law. One statutory exception applies where the proponent of a decedent's estate calls the challenged witness to testify against his own interest. Section 5932 of the Pennsylvania Code states:

> Any person who is incompetent under section 5930 (relating to surviving party as a witness, in case of death, mental incapacity, etc.) by reason of interest may nevertheless be called to testify against his own interest, and in that event he shall become a fully competent witness for either party.

42 Pa.C.S.A. § 5932. The rationale for this exception is that it would be unfair to allow a party to call the challenged witness for the party's benefit and then exclude the witness as to unfavorable testimony. Packel & Poulin, *Pennsylvania Evidence* § 601.5 (1987) (citing *Gallagher v. Rogan,* 330 Pa. 545, 199 A. 168 (1938)). Instantly, appellants called McCormick and asked him questions regarding events which occurred before Hill's death and were adverse to McCormick's interests. When the proponents of the estate initiate such testimony from the challenged witness, any objection to the witness's testimony is effectively waived. Accordingly, under the exception, McCormick became fully competent for both parties as to all matters. *See* Packel & Poulin, *supra* at § 601.5.

Notwithstanding McCormick's properly admissible testimony which the trial court chose to believe, we still find that the evidence was insufficient to prove donative intent. The trial court concluded that donative intent was proven by the following: Hill gave McCormick a sole power of attorney,

Hill signed the certificates and gave them to McCormick and McCormick cared for Hill on a daily basis until her death. Appellants contend that these findings alone do not establish donative intent. We agree.

As noted above, it was McCormick's initial burden to establish donative intent by clear and convincing evidence. Our Supreme Court has defined clear and convincing as follows:

the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*In re Estate of Fickert,* 461 Pa. 653, 658, 337 A.2d 592, 594 (1975).

McCormick testified that Hill first gave him the certificates in February of 1991 for "safe-keeping" because there were visiting nurses in the house. (R.R. 313a.) At this point he stated that Hill had not endorsed the certificates. Next, McCormick testified that Hill endorsed the certificates in March of 1991. (R.R. 299a). He later testified, however, that the certificates were not endorsed until April. (R.R. 314a.) McCormick was also unable to designate the precise date that he received the sole power. Additionally, our review of the record reveals that McCormick failed to proffer evidence of Hill's donative intent for each and every transaction he performed.

For the foregoing reasons, we conclude that McCormick failed establish a prima facie case of a gift inter vivos, since there was no clear and convincing evidence of donative intent and delivery. The burden should therefore not have shifted to appellants to rebut the validity of the gifts.

## II.

Turning to appellants' second argument, we must determine whether the lower court abused its discretion or committed an error of law in holding that no confidential relationship existed

between Hill and McCormick. For the purposes of this discussion, we shall assume that McCormick offered sufficient evidence to establish a prima facie case of donative intent and delivery.

A confidential relationship exists where the circumstances "make it certain that the parties did not deal on equal terms; where, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed." *Weir v. Ciao,* 521 Pa. 491, 504, 556 A.2d 819, 825 (1989). The burden is initially on the party seeking to set aside a transaction to prove that a confidential relationship existed between the parties. *Thomas v. Seaman,* 451 Pa. 347, 304 A.2d 134 (1973). "[W]here undue influence and incompetency do not appear and the relationship between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relationship must be certain, it cannot arise from suspicion or from infrequent or unrelated acts." *Weir, supra* 556 A.2d at 825. If it is established that a confidential relationship existed at the time the alleged gift was made, the burden shifts to the donee to show that the alleged gift was free of any taint of undue influence or deception. *Id.; Banko, supra.*

Appellants argue that the inter vivos transfers should be set aside because Hill was incompetent. Specifically, they aver that Hill was mentally confused and in a weakened state during the months preceding her death when all of the disputed transactions occurred, and the burden should have been placed on McCormick to prove the gifts were a free, voluntary and intelligent act. During this time, McCormick brought Hill to the Pocono Medical Center where she was examined by Dr. William Ryan. McCormick told Dr. Ryan that Hill was suffering from hallucinations. Apparently, Hill had indicated that she had been flown in a blimp and was talking to imaginary persons. (R.R. 177a–178a.) Dr. Ryan testified that Hill was "confused" during her hospital stay. (R.R. 179a.) Hill was discharged four days later after refusing to undergo a neurological evaluation. The discharge summary included the diagnosis: "dementia, alzheimer's type." (R.R. at 182a.)

Additionally, Margaret Schland–Horan, an employee of Visiting Nurses of Monroe County, testified that she had personal contact with Hill in the months following her discharge from the hospital and prior to her death. Schland–Horan testified that Hill was unable to answer questions correctly, at times appeared "delusional," and often saw warriors in the room. (R.R. 202a–203a.) She also testified that Hill stated that her dogs would help around the house by fetching washcloths and towels. (R.R. 204a.) Hill also threw her colostomy bag, and other items, at the visiting nurses. (R.R. 206a.)

Nevertheless, the trial court found that appellants had failed to prove that McCormick had an overmastering influence or a superior position over Hill. Rather, the court found that there was sufficient evidence to support the conclusion that Hill was a strong-willed and independent individual. First, Felicity Gearhart, a friend of McCormick's who helped care for Hill, testified that Hill was very much aware of her basic needs, always made sense in her conversations, had no difficulty communicating, and always knew the day of the week. (R.R. 271a–272a.) Second, Louise Metzger stated that Hill collected money at bingo games during February, March and April of 1991 and was "really dedicated and competent." (R.R. 266a.) Third, Harry Rhodes, who resided with Hill prior to her death, testified that in May of 1991, Hill had no trouble communicating and knew where she was and what she was doing. (R.R. 284a–286a.) Finally, McCormick testified that Hill experienced hallucinations during radiation treatments; however, her medication was gradually reduced, and she was no longer hallucinating at the time she gave him the certificates. (R.R. 303a–304a.) Accordingly, there was sufficient evidence to support the trial court's findings with respect to Hill's competency and we will not disturb this finding.

Our review of the law in this area, however, indicates that demonstrating the incompetency of the decedent constitutes only one way of demonstrating the existence of a confidential relationship. For example, a confidential relationship may be established by proof that the alleged donee possessed a power of attorney over a decedent's assets. As Justice

Roberts stated in *Foster v. Schmitt*, 429 Pa. 102, 239 A.2d 471 (1968):

> [I]f there be any clearer indicia of a confidential relationship than the giving by one person to another of a power of attorney over the former's entire life savings, this Court has yet to see such indicia.

*Id.* at 108, 239 A.2d at 474. This is particularly true, when the alleged donee is shown to have spent a great deal of time with decedent or assisted in decedent's care. For example, in *Foster*, the Court noted that the alleged donee was a constant companion of decedent and administered practically all of decedent's personal and business affairs during the waning years of decedent's life. Similarly, in *In re Estate of Keiper v. Moll*, 308 Pa.Super. 82, 454 A.2d 31 (1982), a confidential relationship was established where the son-in-law had been given a power of attorney over decedent's assets, decedent had recently lost his wife, was terminally ill from cancer and unable to care for himself, and was growing mentally weaker. As in this case, there was no finding in *Keiper* that decedent was incompetent. Rather, the court found that decedent had reposed trust in his son-in-law and "could easily have assumed his affairs would be administered with his best interest in mind." *Cf., In re Estate of Ziel*, 467 Pa. 531, 359 A.2d 728 (1976) (alleged donee's power of attorney over estate of decedent insufficient to establish confidential relationship where it was clear the power was executed only for the convenience of alleged donor).

Assuming that McCormick can establish sufficient evidence on remand of the sole power-of-attorney, the circumstances surrounding the relationship between Hill and McCormick would unequivocally establish a confidential relationship. According to McCormick and the branch manager of Palmerton National Bank, the sole power gave him broad authority over Hill's life savings. Sufficient proof of the sole power, coupled with the fact that Hill was ailing from cancer, diagnosed with dementia, alzheimer's type, and depended upon McCormick for her care, would operate to shift the burden to McCormick to prove the gifts were fair and free from suspi-

cion. As Judge Hoffman noted in *Keiper*, "[t]ransactions by which a decedent shortly before his death practically strips. himself of all his available property are naturally regarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye." *Id.* 308 Pa.Super. at 87–88, 454 A.2d at 34 (citing *Wise's Estate*, 182 Pa. 168, 37 A. 936 (1897)).

Based upon the record before us, we are unable to sustain the trial court's ruling that McCormick's receipt of Hill's assets was accomplished pursuant to a valid inter vivos gift. Accordingly, we are convinced a new trial is warranted.

## III.

In their final argument, appellants assert that the trial court should have permitted them to open the record to admit additional evidence of McCormick's alleged fraud against Hill's estate. Specifically, appellants alleged that McCormick used Hill's Sears charge card after her death to purchase $1,045.04 worth of items for his personal use. We need not address this issue, however, since we remand for a new trial.

Reversed and remanded for further proceeding consistent with this opinion. Jurisdiction relinquished.