**George ZIGMANTANIS, Appellee,**

v.

**Joseph and Edward ZIGMANTANIS, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2002.

Filed April 24, 2002.

Stephen P. Ellwood, Pottsville, for appellants.

James F. Menconi, Tamaqua, for appellee.

BEFORE: STEVENS, TODD, and CAVANAUGH, JJ.

STEVENS, J.

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Schuylkill County directing partition of real estate located at the corners of Tioga and Chestnut Streets in the Village of Tuscarora, Schuylkill County.[1] Appellants Joseph and Edward Zigmantanis contend that (1) Appellants proved that the property was given to Appellant Edward Zigmantanis as an *inter vivos* gift, (2) Appellants proved that George Zigmantanis created a remainder interest in the property on behalf of Appellant Edward Zigmantanis, and (3) the Dead Man's rule did not prevent the introduction of Appellants' testimony.[2] We affirm.

---

1. An order directing partition is an interlocutory order appealable as of right pursuant to Pennsylvania Rule of Appellate Procedure 311(7).

2. In their Statement of Questions Involved, Appellants state: "Is partition appropriate where one of the alleged joint owners of real estate proves that he is, in fact, the sole owner?" Appellants' Brief at 2. We conclude that

¶ 2 The relevant facts and procedural history are as follows: George Zigmantanis and his wife, Barbara Zigmantanis, acquired the subject property on October 1, 1975. Barbara Zigmantanis predeceased her husband, who then died intestate on March 15, 1990, leaving to survive him his three children, Appellee George Zigmantanis, Jr., and Appellants Joseph and Edward Zigmantanis. During their lifetime, neither George nor Barbara Zigmantanis conveyed the property at issue, and George Zigmantanis was the sole owner at the time of his death. On March 25, 1991, Appellee was appointed administrator of his father's estate, and Appellee made no conveyances of the property while acting in this capacity.

¶ 3 On March 28, 2000, Appellee filed a complaint in equity seeking partition of the property. Specifically, Appellee alleged that he and Appellants owned the property as tenants in common due to their father dying intestate, Appellants resided on the premises since 1990 without paying rent, and Appellee was entitled to rent and/or other relief the court deemed appropriate. Appellants filed an answer alleging that Appellee had no interest in the property, and the parties' father gifted the property to Appellant Edward Zigmantanis while he was alive. Appellants further claimed that Appellant Edward Zigmantanis lived with his parents at the subject property for approximately twenty-two years, Appellant Joseph Zigmantanis moved into the property upon his father's death, Appellant Edward Zigmantanis maintained the property and paid all expenses associated therewith after his father's death, and Appellee paid no expenses.

¶ 4 On May 24, 2001, the matter proceeded to a bench trial, following which the trial court granted Appellee's request for partition. Specifically, in a detailed opinion, the trial court concluded that (1) the court properly precluded Appellants' testimony under the Dead Man's rule, (2) the evidence failed to establish that the property was gifted to Appellant Edward Zigmantanis, (3) the evidence failed to establish that George Zigmantanis intended to create a life estate with Appellant Edward Zigmantanis as the remainder, and (4) the parties own the land as tenants in common. This timely appeal followed.[3]

At the outset, we note that in reviewing a decree in equity, we are bound to accept the chancellor's findings of fact. The chancellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated, because he has the opportunity to hear them and observe their demeanor on the stand. Thus, our review is limited to a determination of whether there was an error of law and whether the chancellor's factual findings are supported by sufficient evidence. *Hera v. McCormick*, 425 Pa.Super. 432, 625 A.2d 682, 685 (1993) (citation, quotations, and quotation marks omitted).

¶ 5 Appellants' first contention is that the evidence revealed that Appellant Edward Zigmantanis received the property from his father as an *inter vivos* gift.

The requisites for the creation of a valid parol gift of land are well established. In *Yarnall's Estate*, 376 Pa. 582, 590, 103 A.2d 753, 758 (1954), [the Supreme Court] set forth the following requirements: (1) evidence of the gift must be direct, positive, express, and

<hr/>

this issue is a restatement of the issue regarding the creation of an *inter vivos* gift in favor of Appellant Edward Zigmantanis.

3. The trial court did not order a Pa.R.A.P. 1925(b) statement and no such statement was filed.

unambiguous; (2) possession of the land must be taken at the time or immediately after the gift is made, and such possession must be exclusive, open, notorious, adverse, and continuous; and (3) the donee must make valuable improvements on the property for which compensation in damages would be inadequate.

Thus, *Yarnall* clearly established that the elements of a parol gift of land must be established by evidence which is direct, positive, express, and unambiguous. Underlying this requirement is a view that delivery of a deed, as is generally necessary under the Statute of Frauds, 33 P.S. § 1, is the normal and proper means for conveying title to real property. Only where it is abundantly clear, leaving nothing to speculation, that a parol gift has occurred does *Yarnall* permit recognition of the gift. The stringent requirements of *Yarnall* exist to encourage persons to transfer properties in the proper manner, by means of deed, and to foreclose the claims of those who might otherwise assert questionable claims of ownership in others' properties.

*Further, where, as in this case, the alleged parol gift of land is between parent and child, evidence of an even more clear and weighty nature is required than is necessary where the alleged gift was between unrelated persons.*

*Fuisz v. Fuisz*, 527 Pa. 348, 352–353, 591 A.2d 1047, 1049 (1991) (citations omitted) (emphasis added).

¶ 6 Applying these standards to the present case, we conclude that Appellants failed to satisfy their heavy burden of proving that a parol gift was made to Appellant Edward Zigmantanis. For example, Donna Zigmantanis, Appellant Joseph Zigmantanis' daughter, testified that she spent many summers with her grandparents at the subject property from when she was born in 1977 to when she turned fourteen in 1991. Donna testified that her grandfather frequently told her that the property "was Uncle Eddie's [Zigmantanis'] and it was going to [her] Uncle Eddie." N.T. 5/24/01 at 10. She observed Appellant Edward Zigmantanis mowing the lawn, doing yard work, painting, and installing new tile, cabinets, and carpet. N.T. 5/24/01 at 11. She also saw Appellant Edward Zigmantanis give her grandfather money for bills. N.T. 5/24/01 at 11.

¶ 7 Theresa Sinkonis testified that she is the parties' first cousin, George Zigmantanis was her uncle, and that she lived across from the subject property. N.T. 5/24/01 at 16–17. During the last two years of George Zigmantanis' life, Theresa would visit him nearly every evening and talk about, *inter alia*, family affairs. N.T. 5/24/01 at 17–18. George Zigmantanis told Theresa that "the place would go to Edward Zigmantanis, Edward, the son." N.T. 5/24/01 at 18. Theresa indicated that, after his death, George Zigmantanis was going to give the property to Appellant Edward Zigmantanis to repay him for moving from New York to Schuylkill County to take care of his parents. N.T. 5/24/01 at 19, 22. She specifically stated the following:

I told [Uncle George Zigmantanis] ... he should have a will made out, and he said he would have one; and it just went on; and I told him, Uncle George, why don't you mark it down on a piece of paper that—you know what I mean, at least you have something, you know; but he never did, I guess.

N.T. 5/24/01 at 21. Theresa admitted that she never heard her uncle, George Zigmantanis, indicate that he gave the property to Edward Zigmantanis or that he was going to do so prior to his death. N.T.

5/24/01 at 22. Rather, the conversation always revolved around George Zigmantanis' plans for the property after his death. N.T. 5/24/01 at 22–23.

¶ 8 Appellant Edward Zigmantanis testified that he has lived at the subject property for approximately twenty-two years, and he helped his parents with the bills. N.T. 5/24/01 at 31–32. He made substantial improvements to the property prior to and after his father's death. N.T. 5/24/01 at 32–33. Appellant Edward Zigmantanis testified that he paid the inheritance tax and remaining mortgage on the property without contribution from Appellant Joseph Zigmantanis or Appellee George Zigmantanis, Jr. N.T. 5/24/01 at 34, 41–42. Edward Zigmantanis wished to testify concerning statements his father made to him about the house, however, upon Appellee's objection, the trial court excluded the proposed testimony. N.T. 5/24/01 at 26–27, 49–50.

¶ 9 Joseph Zigmantanis testified that he moved into the property shortly after his father's death. N.T. 5/24/01 at 54. Joseph Zigmantanis wished to testify about statements made by his father about the house, however, upon Appellee's objection, the trial court excluded the proposed testimony. N.T. 5/24/01 at 55.

¶ 10 We conclude that Appellants failed to offer direct, positive, express, or unambiguous evidence establishing that a gift was made. At most, the evidence revealed that, upon his death, George Zigmantanis intended to leave the property to his son, Appellant Edward Zigmantanis, but failed to take the proper legal steps to do so. While the witnesses may have expected that the property would be given to Appellant Edward Zigmantanis due to his years of devotion to his parents, such an infer-

ence is insufficient to establish an *inter vivos* gift. With regard to Donna's testimony that George Zigmantanis stated the property "was Uncle Eddie's and was going to Uncle Eddie," we find the statement to be, at best, ambiguous. While the statement implies that the property was given to Appellant Edward Zigmantanis, it equally implies that the property was going to be willed to Appellant Edward Zigmantanis upon his father's death. As such, we find Appellants' first contention to be meritless.

¶ 11 Appellants' second contention is that they proved that George Zigmantanis created a remainder interest in the property on behalf of Appellant Edward Zigmantanis. We find this issue to be waived.

■ ¶ 12 Appellants' entire argument on this matter is as follows:

> In the alternative, the evidence proves that George, Sr. created a remainder interest in the property for Edward after a life estate for himself. If George, Sr.'s words do not establish a present intent to give the property to Edward, they certainly establish his intent to retain a life estate with the remainder to Edward.

Appellants' Brief at 9. Appellants have failed to explain precisely what words established the alleged remainder interest and have failed to cite any authority for this proposition. *See* Pa.R.A.P. 2119. Appellants' bald assertion that the deceased intended to create a remainder interest on Appellant Edward Zigmantanis' behalf is not sufficient to permit meaningful appellate review. As such, we decline to address the issue further.[4]

4. This issue was not specifically raised in Appellants' Statement of Questions Involved in

violation of Pa.R.A.P. 2116.

¶ 13 Appellants' final contention is that the trial court erred in applying the Dead Man's rule, which is codified at 42 Pa.C.S.A. § 5930, thereby improperly preventing Appellants from testifying concerning statements George Zigmantanis made regarding his donative intent. Specifically, Appellants contend that the trial court erred in concluding that Appellants failed to present independent testimony establishing *prima facie* evidence of donative intent.

According to the Dead Man's Rule or Dead Man's Statute, surviving parties who have an interest which is adverse to decedent's estate are disqualified from testifying as to any transaction or event which occurred before decedent's death. Where, as in this case, there is an issue regarding the validity of an *inter vivos* gift, the court may not admit statements of decedent absent independent testimony and establishing *prima facie* evidence of donative intent. If the alleged donee fails to establish *prima facie* evidence of a gift or transfer, by independent testimony before he takes the stand, he is not competent to testify.

*Hera,* 625 A.2d at 688 (citations, quotation, and quotation marks omitted).

The rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony.

*Punxsutawney Municipal Airport Authority v. Lellock,* 745 A.2d 666, 670 (Pa.Super.2000).

¶ 14 With the exception of Appellants, Donna Zigmantanis and Theresa Sinkonis were the only witnesses to testify at trial. At most, their testimony established that the deceased, George Zigmantanis, considered leaving the property to Appellant Edward Zigmantanis upon George's death. Their testimony certainly did not establish by clear and convincing evidence that the deceased intended to give Appellant Edward Zigmantanis an *inter vivos* gift. *See In re Estate of Petro,* 694 A.2d 627 (Pa.Super.1997) (indicating that clear and convincing evidence is standard to use in determining if a *prima facie* case was established). As such, Appellants' testimony was properly excluded on the basis that they failed to present independent testimony establishing *prima facie* evidence of donative intent.

¶ 15 Affirmed.