J-A20021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERICA FLEAGLE LEACH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEGGY A. DAVIS | : | |
| | : | |
| Appellant | : | No. 81 MDA 2017 |

Appeal from the Judgment Entered April 10, 2017
In the Court of Common Pleas of Franklin County
Civil Division at No(s):  2011-00437

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.           **FILED FEBRUARY 13, 2018**

Two months before his death in 2010, Ira Fleagle deeded his 110[1] acre farm to his daughter, Appellant Peggy Davis. Shortly after his death, Appellee Erica Leach, Fleagle's granddaughter and only other surviving intestate heir, filed an action to invalidate the transfer of the farm to Davis under several legal theories. After a remand from this Court, the orphans' court, sitting as fact-finder, entered a verdict in Leach's favor. On appeal, Davis argues the orphans' court erred in finding she had unduly influenced Fleagle to transfer the farm to her for nominal consideration. We affirm.

---

[1] The record contains references to the farm being either 110, 125, or 137 acres. As a previous panel of this Court noted, the parties to this action appear to agree on 110 acres.

The facts of this case are largely undisputed. After a divorce, Davis and her sons moved in with Fleagle in 1978. At some point in the 1980s, she took over the management of Fleagle's finances, and provided him with a monthly allowance. Davis kept Fleagle's money in a joint account and was responsible for paying Fleagle's bills.

Fleagle was semi-literate. He could read and understand advertisements related to farming, but little else. He did not or could not read a book.

After his wife died, Fleagle began a relationship with Mary Hoover. As the relationship progressed, Fleagle would stay in his home with Davis during the week, but would spend weekends with Hoover in her home. In 2004, he moved into Hoover's home exclusively. There he remained until his death in 2010.

Fleagle's relationship with Hoover and his living arrangements had no impact on Davis's duties managing his finances. She continued to maintain the joint account and pay his bills while providing him with a monthly allowance.

Fleagle was hospitalized for a heart attack in October 2010. Hospital staff informed Davis that Fleagle would be transferred to a nursing home for rehabilitation. Fearing that a lengthy stay in a nursing home would require liquidation of the family farm, Davis asked Fleagle to sell the property to her for $1.

On October 27, 2010, Fleagle executed a deed conveying the property to Davis for $1. The transaction occurred at Fleagle's hospital bed. Fleagle was never transferred to a nursing home and died, intestate, on December 20, 2010.

Approximately six months later, Leach filed a complaint seeking to invalidate the October 27, 2010 deed. Discovery ensued, and the parties ultimately filed opposing motions for summary judgment. Leach asserted that Davis had a confidential relationship with Fleagle at the time he executed the deed. If she could prove this assertion, Davis would be required to prove that transfer of the deed was "free of any taint of undue influence or deception." **Hera v. McCormick**, 625 A.2d 682, 690 (Pa. Super. 1993) (citations omitted).

The trial court concluded Leach had failed to adduce sufficient evidence of a confidential relationship, granted Davis's motion, and dismissed Leach's complaint. On appeal, this Court reversed, holding Leach had presented sufficient evidence of a confidential relationship to survive a motion for summary judgment. The case was remanded for a bench trial.

After hearing the evidence, the trial court found Leach had established Davis had a confidential relationship with Fleagle at the time the deed was executed. Furthermore, the court found Davis had failed to establish the deed transfer was not caused by undue influence. It therefore ordered Davis

to transfer ownership of the property to Fleagle's estate for proper distribution.

Davis filed a post-trial motion arguing the trial court had erred in (1) failing to determine whether she had been unjustly enriched before creating a constructive trust, (2) concluding that a confidential relationship had existed, and (3) considering certain medical evidence.[2] The court denied the motion on January 3, 2017. Davis filed this appeal and subsequently had the verdict reduced to judgment.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

*Stephan v. Waldron Elec. Heating and Cooling, LLC*, 100 A.3d 660, 664-665 (Pa. Super. 2014) (citation and brackets omitted). Further, the fact-finder is free to accept or reject the testimony of both expert and lay

---

[2] Davis's motion was mistakenly titled "Motion to Reconsider." Our review indicates that despite this mistake, the motion is properly considered a motion for post-trial relief. We therefore decline to find Davis's issues on appeal waived. Furthermore, while the motion was technically filed twelve days after the verdict, it was timely filed. The motion was required to be filed by December 25, 2016, which was a Sunday. The Franklin County Courthouse was closed on December 26, 2016, as a court holiday. Thus, the motion was timely filed on December 27, 2016. *See* Pa.R.C.P. 106(b).

witnesses, and to believe all, part or none of the evidence. ***See Terwilliger v. Kitchen***, 781 A.2d 1201, 1210 (Pa. Super. 2001).

Davis's first two issues assert the trial court applied improper standards in concluding Fleagle had been unduly influenced. Often, the concept of undue influence is addressed in cases arising from a will contest. However, the standards by which we measure a claim of undue influence are the same for *inter vivos* gifts. ***See Withers v. Withers***, 70 A.2d 331, 332 (Pa. 1950).

To establish undue influence, a plaintiff must establish three elements by clear and convincing evidence. ***See In re Estate of Ziel***, 359 A.2d 728, 734 (Pa. 1976). First, a plaintiff must establish the existence of a confidential relationship between the grantor and the defendant. ***See In re Estate of Fritts***, 906 A.2d 601, 607 (Pa. Super. 2006). In addition to the confidential relationship, a plaintiff must establish the defendant received a substantial benefit pursuant to the confidential relationship. ***See id***. Finally, the plaintiff has the burden of establishing the grantor had a weakened intellect at the time of the transfer. ***See id***.

If a plaintiff meets these burdens, the burden shifts to the defendant to establish the absence of undue influence. ***See In re Bosley***, 26 A.3d 1104, 1108 (Pa. Super. 2011). The defendant must meet this burden by clear and convincing evidence. ***See id***.

First, Davis argues the evidence of record cannot support a finding of undue influence as it was not sufficient to establish that she acted to control Fleagle's decision to give her the property. Thus, she challenges the court's conclusion that a confidential relationship existed between herself and Fleagle.

A confidential relationship exists when "the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, *or,* on the other, weakness, dependence or trust, justifiably reposed." **Owens v. Mazzei**, 847 A.2d 700, 709 (Pa. Super. 2004) (citations omitted; emphasis in original). Likewise, a confidential relationship "is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel." **In re Estate of Fritts**, 906 A.2d 601, 608 (Pa. Super. 2006) (citation omitted).

Here, we can find no error in the trial court's determination. A confidential relationship "exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." **Foster v. Schmitt**, 239 A.2d 471, 474 (Pa. 1968) (citation omitted). As noted above, it is undisputed Davis acted as her father's financial manager for years before his death. She was responsible for paying his bills and paid him a monthly allowance. It is

thus clear Fleagle had confidence Davis would act in good faith in pursuit of his interests.

Davis next argues the trial court utilized an improper standard after finding a confidential relationship existed. She contends the court was required to determine she used *undue* influence after it found the existence of a confidential relationship. We disagree.

Davis contends the trial court found she was not motivated by ill-will and that she was acting in Fleagle's best interests when she counseled her father to transfer the property to her. However, a careful reading of the court's opinion reveals Davis's summary to be inaccurate. The court wrote:

> Unfortunately for [Davis], she cannot overcome the fact that the transaction, *although perhaps motivated by good intentions*, was …[3] an act of undue influence. In fact if the court looks over Mr. Fleagle's life he was always very determined to retain the farm to keep it for himself. However when presented with misinformation and an inaccurate statement that the nursing home could attach and make a claim against the farm, depriving him of it, he executed a deed without question. His independence and determination to retain the farm as evidenced by all of his past conduct and his ability to deflect and parry away requests to purchase the farm was undermined by a few simple and inaccurate statements by his daughter.
>
> The court has been encouraged to find that the conveyance of the farm to Ms. Davis was of little to no consequence, because the farm was to be hers. Yet the record is devoid of any testamentary document confirming just that.

Trial Court Opinion, 12/15/16, at 27-28 (emphasis supplied).

_____

[3] We omit the word "not" as context indicates this was an inadvertent typographical error.

Thus, the court did not find Davis had acted with proper intentions, but rather allowed that this may have been the case. The remaining portion of the paragraph reveals why the court was not persuaded by Davis's contention that the conveyance of the farm conformed with a good faith consideration of Fleagle's desires and goals.

The trial court's factual findings are amply supported by the record. And we cannot find that its legal reasoning is unsound. Davis's second argument on appeal therefore merits no relief.

In her third and final argument, Davis asserts the trial court was required to find that she was unjustly enriched before it could impose a constructive trust on the property. A constructive trust may be imposed when the grantee of a property had a confidential relationship with the grantor at the time of transfer and that there was a promise to reconvey the property. *See Moreland v. Metrovich*, 375 A.2d 772, 775 (Pa. Super. 1977). This test, utilized by the trial court, is an alternative test to the "unjust enrichment" test cited by Davis. *See id*., at 776. Thus, contrary to Davis's argument, the trial court was not required to find she was unjustly enriched in order to impose the constructive trust.

Furthermore, we conclude the trial court's imposition of the constructive trust is justified in any event. Davis argues that, as the only living child of Fleagle, and one who had not only lived with him for a significant time, but also provided care and companionship to him, she was

not unjustly enriched by receiving the property. However, as the trial court noted, there is no testamentary document regarding ownership of the property, let alone a testamentary document directing she receive it. Evidence at trial revealed Fleagle desired, above all, to retain possession of the farm during his life, and he only transferred it to Davis when he feared it would be seized by the nursing home to pay for his care.

This evidence is sufficient to support a finding that Fleagle desired to have the property reconveyed to him under circumstances where its ownership was no longer subject to attack by creditors. Under these circumstances, the trial court's imposition of a constructive trust is well supported by the record. Davis's final issue on appeal merits no relief.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/13/2018