J-A27005-20

2021 PA Super 27

| IN RE ESTATE OF FIORENTINO CERULLO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: EXECUTRIX, ANTONIETTE VELLECA | |
| | No. 1354 EDA 2020 |

Appeal from the Order Dated June 2, 2020
In the Court of Common Pleas of Northampton County
Orphans' Court at No: 4818-0047

BEFORE:  STABILE, J., NICHOLS, J. and COLINS, J.[*]

OPINION BY STABILE, J.:                    Filed: February 25, 2021

Appellant, Antoniette Velleca ("Executrix"), personal representative of the estate of Fiorentino Cerullo, deceased ("Husband"), appeals from an order granting the objections of Cathy Cerullo ("Wife") to the first and final account of Husband's estate.  Husband and Wife married four weeks before Husband died of cancer.  The Orphans' Court held that Husband made a valid *inter vivos* gift of a 1988 Porsche, a 2001 BMW motorcycle and a 2004 BMW motorcycle ("the vehicles") to Wife shortly before his death.  Executrix argues that the Dead Man's Act, 42 Pa.C.S.A. § 5930, precluded testimony by Wife and several witnesses that Husband intended to deliver, and in fact delivered, the titles to the vehicles to Wife.  We hold that the Dead Man's Act precludes Wife's testimony concerning delivery of the titles, and without this testimony, there

_____

[*] Retired Senior Judge assigned to the Superior Court.

is insufficient evidence to support Wife's claim of any *inter vivos* gift. Accordingly, we reverse.

On December 8, 2017, Husband and Wife executed prenuptial agreements and then married. On January 5, 2018, Husband died. He was survived by Wife and his two children. Later in January, the Register of Wills admitted to probate a will that Husband executed on November 22, 2017 and granted letters testamentary to Executrix, Husband's sister. Executrix filed a first and final account that included the vehicles as assets of Husband's estate. On October 20, 2019, Wife filed objections to the first and final account claiming that Husband gifted the vehicles to her before his death, so she owned the vehicles instead of the estate.

On January 27, 2020, the Orphans' Court held an evidentiary hearing relating to Wife's objections. Executrix, the first witness, testified that the vehicles were titled in Husband's name at the time of his death. Executrix pointed out that before Husband died, he wrote a note transferring another car, a Mercedes, to a non-party, Judy Chapman. Husband did not notarize the note because he was too ill to travel to a notary. The Mercedes was transferred to Chapman one day before Husband's death.

Wife presented three witnesses: (1) her neighbor, Kathy Moore; (2) her brother Scott Shellhammer; and (3) herself. All three witnesses testified over Dead Man's Act objections lodged by Executrix. Moore testified that during a party on September 3, 2017, Husband told her that he wanted Wife to have his Porsche because of the great times they had together in the car.

Shellhammer testified that during Thanksgiving in 2017, Husband told him that he was giving the vehicles to Wife. Husband and Shellhammer had a detailed conversation about transporting the vehicles from Husband's residence in Bethlehem, Pennsylvania to Wife's residence in Glenmoore, Pennsylvania. Shellhammer stated the vehicles were never moved to Glenmoore due to the need for multiple drivers and Husband's declining health. The vehicles remained at Husband's residence at the time of his death.

Wife, the final witness, was the only witness who testified about the actual delivery of the titles and keys to the vehicles. Wife testified that on December 5, 2017, Husband handed her the titles and keys to the vehicles, and she placed the keys and titles in or on the respective vehicles in Husband's garage. There were no notations on the titles indicating that Husband was transferring the titles to Wife. Instead, the titles were endorsed with unnotarized signatures in spaces captioned "Seller." Wife testified that she did not see Husband sign the titles, but she claimed that the signatures on the titles were consistent with Husband's signature. Husband continued to maintain insurance coverage on the vehicles until his death.

Finally, a notarized prenuptial agreement dated December 8, 2017 was admitted into evidence without objection by Executrix. Therein, both Husband and Wife listed their assets, but neither Husband nor Wife listed the vehicles as assets.

On June 2, 2020, the court granted Wife's objections to the first and final account. On June 17, 2020, Executrix timely appealed to this Court. **See**

Pa.R.A.P. 342(a)(6) (appeal may be taken as of right from Orphans' Court order determining interest in real or personal property). Both Executrix and the Orphans' Court complied with Pa.R.A.P. 1925.

Executrix raises the following issues in this appeal:

A. Did the [Orphans'] Court err in concluding that [Husband] made a valid *inter vivos* gift of the 1988 Porsche, 2004 BMW motorcycle, and 2001 BMW motorcycle ("vehicles") to [Wife]?

B. Did the [Orphans'] court err in concluding that [Wife] and her witnesses are not barred by the Dead Man's Act?

C. Did the [Orphans'] Court err in concluding that [Husband] delivered the vehicles to [Wife]?

D. Did the [Orphans'] Court err in concluding that the vehicles are not assets of [Husband's] Estate[?]

Executrix's Brief at 9. We hold that the Dead Man's Act precluded Wife's testimony concerning Husband's delivery of the titles to the vehicles. Absent this testimony, Wife's objection to Executrix's first and final account fails.

"A valid *inter vivos* gift requires donative intent, delivery, and acceptance." **Estate of Moskowitz**, 115 A.3d 372, 386 (Pa. Super. 2015). "[T]here must be evidence of an intention to make a [g]ift accompanied by [d]elivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property, but to invest the donee with complete control." **Id.** Possession of car keys or title to the car usually is sufficient to prove constructive delivery of a car. **Ream's Estate**, 198 A.2d 556, 558 (Pa. 1964).

- 4 -

Initially, the burden is on the alleged donee to prove an *inter vivos* gift by clear, precise and convincing evidence. ***Hera v. McCormick***, 625 A.2d 682, 686 (Pa. Super. 1992). Once *prima facie* evidence of a gift is established, a presumption of validity arises and the burden shifts to the contestant to rebut this presumption by clear, precise and convincing evidence. ***Id.***

The Dead Man's Act provides in relevant part:

> Except as otherwise provided in this subchapter, in any civil action of proceeding, where any party to a thing or contract in action is dead ... and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such a thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ... party, shall be a competent witness to any matter occurring before the death of the said party.

42 Pa.C.S.A. § 5930. Under the Dead Man's Act, three conditions must be present in order to disqualify a witness under the Act: (1) the deceased must have had an interest in the matter at issue; (2) the interest of the witness sought to be disqualified must be adverse; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest. ***Matthew's Estate***, 246 A.2d 412, 416 (Pa. 1968) (citing ***Hendrickson Estate***, 130 A.2d 143 (Pa. 1957)). The purpose of the Dead Man's Act

> is to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the death of the decedent. The theory is that because the decedent's representative is unable to present evidence regarding the transaction, the other party to the transaction should be similarly restricted.

*Estate of Cecchine*, 485 A.2d 454, 458 (Pa. Super. 1984) (citation omitted).

Application of the Dead Man's Act becomes "difficult," however, "where there are allegations of an *inter vivos* gift by the decedent to the challenged donee." *Friedeman v. Kinnen*, 305 A.2d 3, 4 (Pa. 1973). In this situation, "both the alleged donee and the estate have an interest in the property which may be adverse to the interest of the decedent, depending on whether the alleged transfer took place or not." *Id.* In such circumstances,

> if a valid *inter vivos* transfer can be shown by independent evidence [b]efore the admission of any testimony by the alleged donee, the donee will be considered to represent the interest of the decedent and will be permitted to testify. Conversely, if the alleged donee fails to establish a *prima facie* gift by independent testimony before he takes the stand, he will not be competent to testify.

*Id.*

The Superior Court has articulated this rule as follows:

> Where . . . there is an issue regarding the validity of an *inter vivos* gift, the court may not admit statements of decedent absent independent testimony establishing *prima facie* evidence of donative intent **and delivery**. If the alleged donee fails to establish *prima facie* evidence of a gift or transfer by independent testimony before he takes the stand, he is not competent to testify.

*Hera*, 625 A.2d at 688 (citing *Friedeman*; emphasis added); *see also Estate of Petro*, 694 A.2d 627, 632-33 (Pa. Super. 1997) (under Dead Man's Act, "the court could not admit the daughters' testimony regarding [the decedent's] statements about *inter vivos* gifts without independent testimony

establishing *prima facie* evidence of donative intent **and delivery**") (citing **Hera**; emphasis added).

We are not aware of any decision that addresses whether the Dead Man's Act is satisfied when an interested party presents independent testimony establishing *prima facie* evidence of donative intent but fails to present independent evidence of delivery before testifying about this subject herself. Nevertheless, it is clear from **Friedeman, Hera** and **Petro** that the proper result in such a case would be to prohibit the interested party's testimony concerning delivery without first admitting independent evidence of delivery, a required element of establishing an *inter vivos* gift.[1]

_____

[1] The Orphans' Court may have been misled by an error in another Dead Man's Act decision from this Court, **Zigmantanis v. Zigmantanis**, 797 A.2d 990 (Pa. Super. 2002). The dispute in **Zigmantanis** was whether the father of three brothers gifted a parcel of land to one of the brothers, Edward. The Orphans' Court precluded Edward's testimony under the Dead Man's Act because he failed to present independent testimony concerning intent. This Court affirmed. In the course of our opinion, we quoted **Hera** for the proposition that the court "may not admit statements of decedent absent independent testimony and establishing *prima facie* evidence of donative intent." **Id.**, 797 A.2d at 995 (citing **Hera**, 625 A.2d at 688). Unfortunately, we failed to complete this quote by omitting that independent testimony of "delivery" was required as well. **Hera**, 625 A.2d at 688 ("[w]here, as in this case, there is an issue regarding the validity of an inter vivos gift, the court may not admit statements of decedent absent independent testimony establishing prima facie evidence of donative intent **and delivery**.") (emphasis added). This omission was not crucial to our decision in **Zigmantanis**, because the lack of independent evidence of intent removed any need to consider the issue of delivery. In the present case, however, this omission appears to have misled the Orphans' Court, for the Court recited **Zigmantanis's** incomplete statement, Opinion, 6/2/20, at 3-4, and then improperly admitted Wife's testimony on delivery despite the lack of independent evidence on this subject.

In the present case, Wife presented independent evidence of Husband's donative intent through Moore and Shellhammer, two witnesses who do not stand to benefit from this case. Moore testified that four months before Husband's death, Husband stated that he wanted Wife to have his Porsche. Shellhammer testified that during Thanksgiving, around six weeks before his death, Husband stated that he was giving the vehicles to Wife and spoke with Shellhammer about the logistics of transporting the vehicles to Wife's residence. Further independent evidence of Husband's donative intent comes from the prenuptial agreement executed on the date of Husband's and Wife's marriage, which demonstrates that Husband did not list the vehicles as his own assets.

Wife failed, however, to present independent evidence of Husband's actual or constructive delivery of the vehicles. Neither Moore nor Shellhammer testified about delivery of the vehicles or the vehicle titles to Wife. In addition, while the prenuptial agreement demonstrated Husband's intent to give the vehicles to Wife, it did not show that Husband actually delivered the vehicles or titles to Wife. The only witness who testified about Husband's delivery of the titles was Wife—but since there was no independent *prima facie* evidence of delivery, Wife was not competent to testify about delivery under the Dead Man's Act. **Hera**, 625 A.2d at 688. The Orphans' Court erred by admitting Wife's testimony concerning delivery—and without

Wife's testimony on this subject, her claim that Husband gifted the vehicles to her fails. *Id.*

Accordingly, we reverse the Orphans' Court's order granting Wife's objection to the first and final account of Husband's estate.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/25/21