418 A.2d 454

Howard VISSCHER

v.

Robert O'BRIEN and Teresa O'Brien.

Appeal of Teresa O'BRIEN, Individually and as Executrix of the Estate of Robert O'Brien, Deceased.

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed Jan. 18, 1980.

376

378

Franklin R. Innes, Towanda, for appellant.

David B. Keeffe, Sayre, for appellees.

Before PRICE, WIEAND and VAN der VOORT, JJ.*

* Judge DONALD E. WIEAND is sitting by special designation.

PRICE, Judge:

The instant appeal is from a verdict in the trial court awarding appellee $15,900 as a broker's fee in the sale of a farm owned by appellant and her deceased husband. Appellant appeals from the order of the trial court dismissing her motions for a new trial or for judgment non obstante veredicto and presents five assignments of error. Finding no merit in these assignments, we affirm.

In or about the spring of 1974, the decedent, Robert O'Brien, entered into an oral agreement with Grant Swingle, a licensed real estate broker and an employee of appellee, authorizing Mr. Swingle to act as broker in attempting to sell a farm located in East Smithfield, Bradford County. The agreement was open ended [1] and allegedly provided for a broker's commission of 10%. From the spring of 1974 until May of 1976, Grant Swingle showed the farm to approximately twenty people. During the early part of 1976, Mr. Swingle secured two offers that would have required subdividing the farm into smaller tracts. On May 14, 1976, Mr. O'Brien posted a letter to Grant Swingle stating as follows:

"This is to inform you that I am withdrawing the house, barn, lake, outbuildings and approximately 100 acres lying [*sic*] West of Blakesley Road as for sale, as I have a proposal for that portion and if it is consumated, [*sic*] I will be most satisfied. If for any reason it does not go through I will advise you as to price, terms, and conditions. The two firm offers you submitted are still under consideration and if all goes well we should know if we can go to settlement on them within thirty days. With best regards, Bob and Teresa O'Brien"

Mr. Swingle received this letter five days later on May 19, 1976. The next day, May 20, 1976, he was introduced to

1. As explained during trial, an open ended broker's contract provides that a commission will be paid only if a sale is consummated through the efforts of the particular broker, and allows the seller to list the property with numerous brokers simultaneously. This is in contrast to an exclusive agreement whereby the property is listed with only one broker, and a broker's fee is paid if a sale is consummated by any means during the term of the brokerage agreement.

Mrs. Paul Riffle, who expressed an interest in purchasing a farm. On May 21, 1976, Grant Swingle showed the farm to Mrs. Riffle, and that evening telephoned her husband and gave him further information regarding the land and accompanying structures. Thereafter, Mr. Swingle made several unsuccessful attempts to contact Mr. Riffle. After his May 21, 1976 contacts with the Riffles, Grant Swingle telephoned Mr. O'Brien and informed him of his efforts in interesting them in the property. During the same conversation, Mr. O'Brien stated that the negotiations for the farm mentioned in his letter of May 14, 1976, had been unsuccessful. At some unspecified date, the Riffles contacted Lawrence Finn, the attorney for Mr. and Mrs. O'Brien, and an agreement for the sale of the farm was executed on September 24, 1976, in the amount of $159,000.

Upon learning of the sale of the farm to the Riffles, Grant Swingle addressed a letter to Mr. O'Brien on September 30, 1976, informing him that the sale had been consummated through his efforts and requested payment of the ten percent broker's fee. The O'Brien's refused to pay the fee, and on October 25, 1976, appellee filed an action in fraudulent debtor's attachment to prevent the O'Briens from removing $15,900 of the funds to their new residence in South Carolina. The O'Brien's filed a petition to dissolve the attachment, and on May 13, 1977, a stipulation was filed wherein it was stated that pursuant to an agreement prior to the commencement of the suit, the parties had agreed that Lawrence F. Finn would retain $15,900 from the sale in escrow.[2] As a result of the stipulation and the retention of the funds by attorney Finn, the court entered an order on June 8, 1977, stating that the foreign debtor's attachment would be dissolved upon appellee filing a complaint in assumpsit within thirty days. On June 13, 1977, the court

2. The stipulation further explained that negotiations had been conducted prior to the actual transfer of the property, and that appellee had agreed not to file suit prior to the transfer thus avoiding the creation of a "cloud" upon the title and jeopardizing the planned sale to the Riffles. The parties agreed that after the transfer was completed, $15,900 would be held in escrow and appellee would at that time file suit and the claim to the broker's fee would be litigated.

entered an additional order requiring the $15,900 to remain in Bradford County pending the completion of the litigation. Thereafter, on June 29, 1977, appellee filed a complaint in two counts; the first in assumpsit for the alleged breach of the oral broker's contract, and the second in trespass alleging fraud by the O'Briens in attempting to deprive him of the ten percent broker's commission. The O'Briens filed preliminary objections challenging the jurisdiction of the court which were dismissed on October 18, 1977. No appeal was taken and the case was called to trial after which the jury returned a verdict for appellee in the amount of $15,-900.

Appellant's first assignment is that the trial court lacked in personam jurisdiction because of a defect in the manner in which the June 29, 1977 complaint in assumpsit and trespass was served. That complaint was served by registered mail pursuant to Pa.R.C.P. No. 1027, which authorizes such service when the complaint is not the original process. Appellant argued in her preliminary objections and on this appeal that because the trial court had dismissed the fraudulent debtor's attachment on June 8, 1977, that court no longer had jurisdiction over the O'Brien's or the $15,900 fund, and the only method for service of process was by direct personal service pursuant to Pa.R.C.P. No. 1009(b). Finding this contention to have been waived, we find no error in the ruling of the trial court.

A trial court's ruling on a preliminary objection raising the question of jurisdiction, although interlocutory, is subject to the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, *repealed*, Act of April 28, 1978, P.L. 202, § 2(a) (effective June 27, 1980), which provides for an immediate appeal of such rulings. A preliminary objection raising an issue of improper service is a challenge to the in personam jurisdiction of the court, *see Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906 (1974), and "[a] failure to appeal within the time specified will be deemed a waiver of all objections to jurisdiction over the defendant personally." Act of March 5, 1925, *supra*, § 3, *as amended*, 12 P.S. § 674,

*repealed,* Act of April 28, 1978, *supra,* § 2(a) (effective June 27, 1980). Because appellant failed to appeal within twenty days of the October 18, 1977 order dismissing the preliminary objections, the issue of the in personam jurisdiction of the trial court has been waived. *See West Penn Power Co. v. Goddard,* 460 Pa. 551, 333 A.2d 909 (1975).

Appellant's second contention is that the trial court erred in dismissing her objections to the testimony by appellee and his various witnesses on the basis of the dead man's act [3] in that the testimony related to dealings with Robert O'Brien prior to his death. The only specific objections raised by appellant were with respect to the testimony of Joseph Manzak, Grant Swingle and appellee. We will discuss the applicability of the dead man's act to each of these witnesses.

The purpose of the dead man's act is to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the death of the decedent. *Commonwealth v. DiCio,* 218 Pa.Super. 268, 275 A.2d 868 (1971). The theory is that because the decedent's representative is unable to present evidence regarding the transaction, the other party to the transaction should be similarly restricted. The rule is inapplicable, however, when the witness does not have an interest in the outcome of the

---

**3.** Act of May 23, 1887, P.L. 158, § 5, cl. (e), 28 P.S. § 322, *repealed,* Act of April 28, 1978, P.L. 202 § 2(a), (effective June 27, 1978). The dead man's act has been reenacted with minor changes in 42 Pa.C.S. § 5930. The Act of May 23, 1887, in effect at the time of the instant proceeding provided as follows:

"Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person *whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party* or the adjudication of his lunacy, . . . ." (Emphasis added).

proceeding, for in that case the witness would have no reason to misrepresent his dealing with the decedent.

■ In the instant case, we find that both Joseph Manzak and Grant Swingle were not witnesses "whose interest[s] [were] adverse to the said right of such deceased . . . party" at the time of the trial on April 17–19, 1978. *See* *Grasso v. John Hancock Mut. Life Ins. Co.*, 206 Pa.Super. 562, 214 A.2d 261 (1965). John Manzak was a real estate broker and appraiser who testified to his dealings with Grant Swingle and Robert O'Brien in April of 1975 to purchase the O'Brien farm for his own personal use; he had no interest nor would he share in the outcome of the suit between appellee and the O'Briens. Reviewing the transcript, Joseph Manzak was apparently called by appellee to establish that Robert O'Brien had suggested a scheme whereby the transaction could be consummated between Manzak and O'Brien, thus avoiding the necessity to pay appellee the ten percent fee.

■ In the same light, we find that Grant Swingle, although an employee of appellee, was not a witness whose interest was adverse to the O'Briens, and he did not have an interest in the outcome of the litigation. *Cf. East Girard Savings & Loan Assoc. v. Houlihan*, 373 Pa. 578, 97 A.2d 23 (1953); *Canon v. Pennsylvania Trust Co.*, 305 Pa. 422, 158 A. 173 (1931); *McCaulif v. Griffith*, 110 Pa.Super. 522, 168 A. 536 (1933) (agents and employees do not have interests adverse to other party to transaction).

■ We also find no violation of the dead man's act with respect to appellee. Although his interest was certainly adverse to that of the decedent, the testimony elicited from appellee on direct examination revealed little if any information regarding his dealings with the decedent. On direct examination, appellee testified that all dealings with the decedent had been carried out by Grant Swingle. The only substantive testimony was his recollection that he and Swingle had met with the decedent in the fall of 1973, that the decedent desired to obtain approximately $150,000 to $160,-

000 for the farm, and that no agreement was reached on that occasion to retain either appellee or Grant Swingle to serve as broker. All other details regarding the oral contract were supplied through the testimony of Grant Swingle or through the cross-examination of appellee by appellant's attorney. Therefore, we cannot conclude that appellee's direct testimony related in a detrimental manner to any transactions occurring prior to the death of the decedent, and the ruling of the court was not violative of the dead man's act.

■ Appellant's third assignment is that the trial court erred in failing to grant a mistrial when appellee's attorney inquired during cross-examination of Paul Riffle whether $15,900 had been "set aside" from the sale "in order to meet this claim." (N.T. 185). We find no error in the action of the trial court in refusing appellant's mistrial request and instead instructing the jury that the fact that $15,900 had been set aside in escrow was not to be considered as evidence that the sum was actually owed or that the defendants were in any way conceding the merits of appellee's claim.

■ Appellant's fourth contention is that the trial court erred in failing to grant his motion for binding instructions. While technically a motion for binding instructions merely serves as a prerequisite to the filing of a motion for judgment non obstante veredicto, *see* Act of April 22, 1905, P.L. 286, § 1, *as amended*, 12 P.S. § 681, *repealed*, Act of April 28, 1978, *supra*, § 2(a) (effective June 27, 1980), and any assignment of error would be only from the refusal to grant judgment n. o. v., we will address appellant's contention since motions for judgment n. o. v. were filed and denied by the trial court.

■ In reviewing the propriety of a trial court's refusal to grant a motion for judgment n. o. v., an appellate court must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee. *See, e. g., Grubb v. Albert Einstein Medical Center*, 255 Pa.Super. 381, 387 A.2d 480 (1978); *Gonzalez v. United*

*States Steel Corp.*, 248 Pa.Super. 95, 374 A.2d 1334 (1977). Viewed in this light, the evidence was sufficient to establish that Grant Swingle and Robert O'Brien had entered into an oral agreement for Mr. Swingle to serve as broker in attempting to sell the O'Brien farm at a commission rate of ten percent and that the ultimate sale to the Riffles was effected through the efforts of Grant Swingle. Moreover, although the May 14, 1976 letter sent by Robert O'Brien to Grant Swingle may be construed as having revoked the latter's authority to serve as broker for a portion of the farm, the evidence established that Swingle showed the farm to Mrs. Riffle on May 20. The evidence also establishes that shortly thereafter, Robert O'Brien informed Mr. Swingle that the offers mentioned in the May 14 letter had not resulted in a sale, and that the Riffles subsequently purchased the property. The letter of May 14, 1976, did not revoke the authority of Swingle to show all of the farm to a prospective purchaser, and the jury could have concluded that the subsequent conversation between Swingle and Robert O'Brien restored the former's authority to serve as broker for the entire farm and operated as a ratification of Swingle's prior efforts regarding the Riffles. Therefore, we cannot agree with appellant that as a matter of law, Grant Swingle was serving as a mere gratuitous volunteer when he showed the farm to Mrs. Riffle on May 20, 1976, and spoke to Mr. Riffle that evening. Finally, although Mr. Riffle testified that he first learned of the sale of the farm through his business partner and was aware that a local bank was contemplating a foreclosure action, he made no effort to obtain additional information regarding the farm until subsequent to Mrs. Riffle's contacts with Grant Swingle on May 20, 1976. In light of this testimony, the question whether Mr. Swingle was responsible for the ultimate sale was for the jury, and the evidence was not so conclusive as to establish as a matter of law that "there [was] a break in the negotiations between the parties and the intervention of another party [was required] to bring the parties back together." (Brief for appellant at 16–17). Therefore, the

trial court was correct in dismissing appellant's motions for judgment n. o. v.

■ Appellant's final contention is that the trial court erred in instructing the jury that the verdict must be the same as to both defendants. The record establishes that the defendants pleaded a defense limited to a denial that an oral contract had ever been made between Grant Swingle and Robert O'Brien, and instead averred that Swingle had been authorized merely to attempt to secure a purchaser for a commission of five or six percent. Defendants never alleged that Robert O'Brien was without authority to act as agent for Teresa O'Brien in retaining a broker to sell the farm. In light of the restrictive nature of the defendants' pleadings, the trial court did not err in instructing the jury that the verdict as to both defendants was to be the same, nor was error committed in excluding testimony regarding the authority of Robert O'Brien.

The order of the trial court is affirmed.