J-S60004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAY FULKROAD & SONS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GARY LEITZEL AND JEFFREY A. ERNICO, EXECUTORS OF THE ESTATE OF PHILLIP C. APPLE, DECEASED | |
| Appellee | No. 668 MDA 2014 |

Appeal from the Order Entered March 21, 2014
In the Court of Common Pleas of Snyder County
Civil Division at No(s): CV-266-2013

BEFORE:  OTT, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                       **FILED MARCH 31, 2015**

Jay Fulkroad & Sons, Inc. ("Fulkroad") appeals from the order entered on March 21, 2014, in the Court of Common Pleas of Snyder County, granting the motion for judgment on the pleadings filed by Gary Leitzel and Jeffrey A. Ernico, Executors of the Estate of Phillip C. Apple, deceased ("the Executors"), with prejudice, and entering judgment in favor of the Executors and against Fulkroad.  Fulkroad contends the trial court erred in granting judgment on the pleadings by first, failing to find Fulkroad's complaint stated a cause of action for conversion, and second, by finding the Dead Man's Act, 42 Pa.C.S. § 5930, would preclude any testimony to support Fulkroad's claim.  Thirdly, Fulkroad argues the trial court erred in granting judgment on the pleadings, if and to the extent its decision was based upon the parol

evidence rule.  For the following reasons, we reverse and remand for further

proceedings.

The trial court summarized the facts underlying this appeal as follows:

Plaintiff Jay Fulkroad & Sons, Inc. has brought this tort action sounding in conversion to recover the value of 120 loads of asphalt materials allegedly retained by Decedent Phillip C. Apple ["Decedent"] without [Fulkroad's] permission or consent. [Fulkroad] alleges that it had entered into an agreement whereby Decedent permitted [Fulkroad] to store vehicles and deposit asphalt materials on Decedent's property located in Mt. Pleasant Mills, Snyder County.  In exchange for Decedent's permission to store its vehicles and deposit materials on Decedent's property, [Fulkroad] allegedly permitted Decedent to take three or four loads of asphalt material.  [Fulkroad] alleges that without its permission or consent, Decedent took and used an additional 120 loads of asphalt materials at a cost of $200 per load.  [Fulkroad] avers that on December 31, 2010, it sent Decedent an invoice in the amount of $25,440.00 which represents the cost of the asphalt material plus sales tax. [Decedent died on February 19, 2011.]  [Fulkroad] avers it demanded payment from Decedent and the executors of the Decedent's estate – Defendants herein – and that both Decedent and Defendants have failed and refused to pay the amount previously referenced.  Therefore, [Fulkroad] demands the entry of judgment in its favor and against Defendants in the amount of $25,440.00.

Trial Court Opinion, 3/21/2014, at 1–2.

Here, Fulkroad attached to the Complaint as Exhibit "A", a written

agreement, titled "Waste Agreement."  The Waste Agreement, dated May

13, 2010, and signed by the parties, states, in its entirety:

I give permission to Jay Fulkroad & Sons, Inc. to dump waste material on my property.  We Jay Fulkroad & Sons, Inc. will level the waste area to the owner's satisfaction.

Waste Agreement, 5/13/2010. Fulkroad also attached to the Complaint as Exhibit "B", the invoice, dated December 31, 2010, for $25,440.00, Fulkroad had sent to Phillip P. Apple ("Decedent"). Thereafter, in response to the Executor's Answer with New Matter, Fulkroad filed a Reply with New Matter, averring that its claim arose out of Decedent's taking of asphalt materials for his own benefit, and not the Waste Agreement. **See** Fulkroad's Reply With New Matter, 8/8/2013, at ¶14.[1]

On February 4, 2014, the Executors filed a motion for judgment on the pleadings, averring that Fulkroad's claims regarding an oral agreement were barred as parol evidence, and that Fulkroad was not a competent witness, based upon the Dead Man's Act. Fulkroad, on March 5, 2014, filed an Answer with New Matter to the motion, "[d]en[ying] that [Fulkroad] alleged that [the Executors] owe[d $25,440.00] because Decedent breached a May 13, 2010 Waste Agreement." Fulkroad's Answer to Defendants' Motion for

_____

[1] Specifically, Paragraph 14 of Fulkroad's Reply With New Matter, filed in response to the Executor's Answer With New Matter reads:

> Admitted that the Decedent was the owner of the property subject to the Waste Agreement attached to [Fulkroad's] Complaint as Exhibit A. Admitted that Decedent had an actual interest in said Waste Agreement. Denied that said Waste Agreement is at issue. At issue is the taking by Decedent of [Fulkroad's] asphalt materials, without [Fulkroad's] permission or consent.

Judgment on the Pleadings, at ¶1. Fulkroad's Answer further averred that "[Fulkroad] alleged in the Complaint that [the Executors] owe[d] said amount because Decedent converted certain personal property of [Fulkroad] to Decedent's own use." *Id.*

The Executors, on March 20, 2014, filed a Reply to New Matter and a Reply Brief regarding its motion for judgment on the pleadings. In the reply brief, the Executors maintained the "gist-of-the-action" doctrine barred Fulkroad's tort claim of conversion. On March 21, 2014, the Court granted the Executor's motion for judgment on the pleadings with prejudice, and this appeal followed.[2]

At the outset, we set forth our scope and standard of review:

A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving

---

[2] Fulkroad timely complied with the order of the trial court to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

***Southwestern Energy Prod. Co., v. Forest Res., LLC***, 83 A.3d 177, 185 (Pa. Super. 2013) (citation omitted), *appeal denied*, 96 A.3d 1029 (Pa. 2014).

Fulkroad first claims the trial court erred in granting judgment on the pleadings where the well-pleaded statement of facts in Fulkroad's complaint, disputed by the Executors, set forth a cause of action for conversion. The Executors assert the trial court correctly granted judgment on the pleadings, contending that Fulkroad's complaint was based upon a breach of contract, specifically, the Waste Agreement, and therefore Fulkroad's conversion claim is barred by the "gist of the action" doctrine.

The gist of the action doctrine forecloses tort claims:

1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

***Hart v. Arnold***, 884 A.2d 316, 340 (Pa. Super. 2005) (citation omitted).

Recently, this Court stated:

The gist of the action doctrine bars a plaintiff from re-casting ordinary breach of contract claims into tort claims. As this Court previously explained:

Although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of

- 5 -

social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

This doctrine does not preclude an action in tort simply because it resulted from a breach of a contract. To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral.

*Knight v. Springfield Hyundai*, 81 A.3d 940, 950 (Pa. Super. 2013)

(quotations and citations omitted).

Even more recently, in *Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014), the Pennsylvania Supreme Court explained:

If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68 (citations omitted).

Here, we note the trial court was fully apprised of the Executor's position that the gist of the action doctrine barred Fulkroad's conversion claim when deciding the motion for judgment on the pleadings. Furthermore, the trial court, in its opinion, recognized that Fulkroad's cause of action was for conversion. However, the trial court, while granting the Executor's

motion for judgment on the pleadings, did not discuss the gist of the action doctrine as grounds for its decision.

Given that the gist of the action doctrine was raised by the Executors, and, if applicable, would support the trial court's grant of judgment on the pleadings, we will discuss the doctrine.

As set forth above, Fulkroad alleged it entered into an agreement with Decedent to store vehicles and deposit asphalt on Decedent's property. In connection with this allegation, Fulkroad attached to the Complaint as Exhibit "A", the "Waste Agreement." Fulkroad further alleged that in consideration for allowing Fulkroad to store vehicles and deposit asphalt Decedent could have three or four loads of asphalt material, that Decedent without permission took an additional 120 loads of asphalt worth $25,440.00, and that Decedent and the Executors had refused to pay the $25,440.00 invoiced amount. *See* Fulkroad's Complaint, 6/13/2013, at ¶¶ 6–11.

These allegations, while setting forth the parties' contractual relationship, do not describe Decedent's failure to perform a duty owed by Decedent under either the written Waste Agreement, or the oral agreement alleged in the Complaint. Rather, Fulkroad's allegations describe the Decedent's wrongful taking of materials that were located on his property due to the parties' contractual relationship. The duty not to convert property is not created by contract but by "a broader social duty owed to all

individuals, which is imposed by the law of torts." ***Bruno, supra***. Accordingly, based on our review, we conclude the gist of the action doctrine does not bar Fulkroad's conversion action.

We next address the parol evidence rule, which states that, "absent fraud, accident, or mistake, parol evidence of a prior or contemporaneous oral agreement is not admissible to alter, vary, modify, or contradict terms of a contract which has been reduced to an integrated written instrument." ***Kehr Packages v. Fidelity Bank N.A.***, 710 A.2d 1169, 1173 (Pa. Super. 1998). The applicability and effect of the parol evidence rule are properly considered in the context of a motion for summary judgment, and, similarly, a motion for judgment on the pleadings. ***See Coal Operators Casualty Co. v. Charles T. Easterby & Co.***, 269 A.2d 671, 672–673 (Pa. 1970).

The trial court, in evaluating Fulkroad's claim, opined:

The essence of the Complaint herein is that [Fulkroad] and Decedent allegedly agreed that Decedent would take a certain amount of asphalt materials and Decedent removed an excessive amount of materials not contemplated by the oral agreement between [Fulkroad] and Decedent. [The Executors] aver—and we agree—that the document attached to the Complaint does not speak to any agreement regarding the removal of asphalt materials by Decedent in any amount. [The Executors] aver that the only proof of an agreement with Decedent to remove asphalt materials would consist of **parol evidence** with [Fulkroad's] representative testifying to the terms of such an agreement when [the Executors] lack the present ability to refute such allegations and anticipated testimony. [The Executors] invoke the application of the Dead Man's Statute asserting that [Fulkroad] is incompetent to proffer evidence concerning the existence and terms of such an agreement where the only individual who may refute the same is Decedent.

****

> As we have previously observed, the documents attached to the Complaint do not speak to the existence of any agreement between [Fulkroad] and the Decedent regarding the removal of asphalt materials. Exhibit "A" states that [Fulkroad] had Decedent's permission to dump waste material on Decedent's property and that [Fulkroad] promised it would level the waste area to owner's [Decedent's] satisfaction. Exhibit "B" is [Fulkroad's] invoice dated December 31, 2010 directed to Decedent. These documents do not substantiate [Fulkroad's] allegations that it and Decedent agreed that Decedent could remove a specified amount of asphalt material and that Decedent removed material in excess of an agreed amount. Thus it follows that the only proof of such an arrangement/agreement would consist of [Fulkroad's] oral testimony regarding the understanding between [Fulkroad] and Decedent — testimony which can only be confirmed or refuted by Decedent. The facts herein present the exact scenario which the Statute seeks to prevent. Clearly, the Dead Man's Statute would preclude any testimony to support [Fulkroad's] claim.

Trial Court Opinion, 3/21/2014, at 4, 6 (emphasis added).

It appears from this discussion, wherein the trial court mentions parol evidence but once, that the trial court's decision was grounded not on the parol evidence rule, but rather on the Dead Man's Act. Moreover, as discussed above, Fulkroad's claim is for conversion. Therefore, given that the parol evidence rule pertains to written agreements, and that Fulkroad is not relying on the Waste Agreement in making its claim, we conclude the parol evidence rule has no bearing in this case, and cannot justify the grant of judgment on the pleadings.

Finally, we address Fulkroad's claim that the trial court erred in granting judgment on the pleadings based upon the Dead Man's Act. The Dead Man's Act provides in pertinent part:

> [I]n any civil action or proceeding, where any party to a thing or contract in action is dead, ... and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ...party, shall be a competent witness to any matter occurring before the death of said party. …

42 Pa.C.S. § 5930.

This court has held that "[t]he rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony." *Zigmantanis v. Zigmantanis*, 797 A.2d 990, 995 (Pa. Super. 2002) (quoting *Punxsutawney Mun. Airport Authority v. Lellock*, 745 A.2d 666, 670 (Pa. Super. 2000)). "The theory is that because the decedent's representative is unable to present evidence regarding the transaction, the other party to the transaction should be similarly restricted." *Visscher v. O'Brien*, 418 A.2d 454, 458 (Pa. Super. 1980). "The rule is inapplicable, however, when the witness does not have an interest in the outcome of the proceeding, for in that case, the witness would have no reason to misrepresent his dealing with the decedent." *Id.*

As such, the disqualification of testimony under the Dead Man's Act only applies to two classes of witnesses; surviving parties to a transaction and any other person whose interest is adverse to the estate. *In re Hendrickson's Estate*, 130 A.2d 143, 146 (Pa. 1957). If a witness is not a surviving party and has no adverse interest, he is competent to testify. *See Visscher v. O'Brien*, *supra* (finding real estate broker/appraiser and surviving party's employee were both competent to testify as to their dealings with decedent regarding an oral contract for broker's commission allegedly made between surviving party and decedent on the sale of a parcel of decedent's land); *Estate of Grossman*, 406 A.2d 726 (Pa. 1979) (Dead Man's Act did not prohibit the testimony of decedent's daughter's husband regarding alleged oral contract daughter had with decedent to leave her one-half of his estate).

At this stage, since Fulkroad has not yet identified any witnesses, we find that the court's decision to apply the Dead Man's Act was premature. It is clear that the Dead Man's Act would not prohibit Fulkroad from going forward with the presentation of evidence through the testimony of independent witnesses who have no right or interest which is adverse to the deceased. Therefore, we conclude the trial court erred in relying on the Dead Man's Act to grant the Executor's motion for judgment on the pleadings.

Accordingly, based on the foregoing, we reverse the order granting judgment on the pleadings with prejudice, and entering judgment in favor of the Executors and against Fulkroad.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2015