J. A32012/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

ESTATE OF WILLIAM P. O'BRIEN, : IN THE SUPERIOR COURT OF
DECEASED : PENNSYLVANIA
:
:
:
:
:
:
:
APPEAL OF: DONNA WELLINGTON : No. 1796 EDA 2016

Appeal from the Order Entered May 5, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No.: 2014-X3488

BEFORE: DUBOW, RANSOM, AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.: **FILED JANUARY 31, 2017**

The Estate of William P. O'Brien, through its executrix Donna
Wellington ("Appellant"), appeals from the Order entered in the Court of
Common Pleas of Montgomery County Orphans' Court on May 5, 2016,
which granted Terry Terzuolo's objection to the first and final accounting of
the Estate. After careful review, we affirm.

We adopt the facts as set forth by the trial court's May 5, 2016
Opinion. *See* Trial Court Opinion, filed 5/5/16, at 1-4. In summary, the
decedent, William P. O'Brien, operated a business partnership with Terry
Terzuolo starting in 1997. The partners maintained separate income

---

[*] Retired Senior Judge Assigned to the Superior Court.

accounts and capital accounts.[1] Terzuolo primarily maintained the partnership's financial records, and an accountant, John Paciello, would prepare the annual tax returns based on this information.

Beginning in 2013, O'Brien and Terzuolo took steps to dissolve the partnership, including selling the partnership's sole asset, a parcel of real estate in Spring City, Pennsylvania. On February 28, 2014, the partners disbursed the proceeds of the property sale equally at $80,000 each.

O'Brien died testate on September 6, 2014. Appellant filed the first and final accounting of the Estate on September 25, 2015. Terzuolo, through counsel, filed one objection petitioning for payment of an outstanding debt of $64,905.31. Terzuolo claimed that the distribution of $80,000 to each partner in February 2014 was made in error because the partners failed to account for unequal capital accounts prior to distributing the cash proceeds from the property sale.

At a hearing, Terzuolo and the partnership's accountant testified. The court admitted the Partnership Agreement and other documents by stipulation. On May 5, 2016, the trial court sustained Terzuolo's objection

---

[1] Each partner initially contributed equally to their respective capital account. **See** Partnership Agreement, Plaintiff's Exhibit 1, at 1-2. Per the Agreement, upon dissolution of the partnership, once all debts were paid and assets converted to cash, each partner would receive a final disbursement of the amount in their respective capital account to bring the balance to zero. N.T., 3/3/16, at 34. There could be a disparity in the capital accounts based on a partner's capital contributions or profits and losses, and there may be a disparity in the amount each partner receives in this final disbursement of cash. **Id**. at 33-34.

and directed Appellant to pay $64,143 from the Estate to Terzuolo. Appellant filed a timely Notice of Appeal.

Appellant complied with Pa.R.A.P. 1925; the trial court did not prepare a Pa.R.A.P. 1925(a) Opinion responsive to Appellant's Concise Statement of Errors Complained of on Appeal.

Appellant presents two issues for our review:

1. Must a claim against an estate be established by clear, direct, precise and convincing evidence?

2. May the Dead Man's Act be contravened by presentation of the incompetent evidence through a third-party "expert[?]"

Appellant's Brief at 5.

Our standard and scope of review are as follows:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

This Court's standard of review of questions of law is *de novo,* and the scope of review is plenary, as we may review the entire record in making our determination. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (citations and quotation marks omitted).

In her first issue, Appellant avers that, in sustaining Terzuolo's objection, the trial court "ignored the requirement of proof that is clear, direct, precise and convincing" because "[t]here is no mention of this standard of proof" in the trial court's May 5, 2016 Opinion. Appellant's Brief at 11-12. Before addressing the merits of Appellant's first issue raised on appeal, we must determine whether this issue was properly preserved and developed for review.

Our Pennsylvania Rules of Appellate Procedure and our case law lay out the well-established requirements for preserving a claim for appellate review. This Court will address only those issues properly presented and developed in an appellant's brief as required by our rules of appellate procedure. *See* Pa.R.A.P. 2101-2119. "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived." *Karn v. Quick & Reilly Inc*, 912 A.2d 329, 336 (Pa. Super. 2006) (citation and quotation marks omitted). Thus, issues raised in a Brief's Statement of Questions Involved but not developed in the Brief's argument section will be deemed waived. *Harkins v. Calumet Realty Co.*, 614 A.2d 699, 703 (Pa. Super. 1992).

To properly develop an issue for our review, Appellant bears the burden of ensuring that his argument section includes citations to pertinent

authorities as well as discussion and analysis of the authorities. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record[,] and with citations to legal authorities." (citation omitted)).

As this Court has made clear, we "will not act as counsel and will not develop arguments on behalf of an appellant." *Hardy*, *supra* at 771. Where defects in a brief "impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.*

In the instant case, Appellant seemingly attempts to draw several unsupported inferences from the trial court's May 5, 2016 Opinion. Although Appellant contends that the trial court ignored the applicable standard of proof, she fails to point to any evidence to which the trial court applied a different (inapplicable) standard of proof. Appellant also makes a vague and confusing reference to her second argument regarding the Dead Man's Act that appears to challenge the competency and weight given to the evidence. Appellant provides only a single case citation, four sentences of purported "argument," and a large block quotation of the trial court's Opinion. Appellant has simply failed to construct and develop a coherent first issue for appellate review.

Appellant's failure to adhere to the rules of appellate procedure and to develop this issue prevents this Court from conducting a meaningful appellate review. Therefore, we conclude Appellant has waived this issue.[2]

In her second issue, Appellant avers that the trial court erroneously applied the Dead Man's Act[3] by permitting the partnership's accountant, John Paciello, to rely on financial documents during his testimony that Terzuolo prepared. Appellant's Brief at 12, 18.

"It is well settled that the admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." **In re Fiedler**, **supra** at 1025. "For a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." **Id**.

The Dead Man's Act provides, in pertinent part:

**§ 5930. Surviving party as witness, in case of death, mental incapacity, etc.**

[I]n any civil action or proceeding, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such

---

[2] Even if we did not find waiver, Appellant's claim would merit no relief. Our review of the certified record demonstrates that the trial court carefully, thoughtfully, and adequately explained the resolution of Terzuolo's claim in the May 5, 2016 Opinion and applied the proper burden of proof.

[3] 42 Pa.C.S. § 5930.

thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of said party. . . .

42 Pa.C.S. § 5930. The Dead Man's Act prohibits "surviving parties who have an interest which is adverse to decedent's estate [] from testifying as to any transaction or event which occurred before [the] decedent's death." **Zigmantanis v. Zigmantanis**, 797 A.2d 990, 995 (Pa. Super. 2002).

This court has held that "[t]he rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt to testify favorably to himself and adversely to the deceased party, knowing the other party is incapable of contradicting the fallacious testimony." **Id**. (citation and quotation omitted). "The theory is that because the decedent's representative is unable to present evidence regarding the transaction, the other party to the transaction should be similarly restricted." **Visscher v. O'Brien**, 418 A.2d 454, 458 (Pa. Super. 1980). "The rule is inapplicable, however, when the witness does not have an interest in the outcome of the proceeding, for in that case, the witness would have no reason to misrepresent his dealing with the decedent." **Id**.

The disqualification of testimony under the Dead Man's Act only applies to two classes of witnesses: surviving parties to a transaction, and any other person whose interest is adverse to the estate. **In re Hendrickson's Estate**, 130 A.2d 143, 146 (Pa. 1957). If a witness is not a surviving party and has no adverse interest, he or she is competent to testify. **See, e.g.,**

*Visscher*, *supra* (finding that a real estate broker and appraiser were both competent to testify regarding an oral contract for broker's commission allegedly made between a surviving party and decedent on the sale of a parcel of decedent's land); *Estate of Grossman*, 406 A.2d 726 (Pa. 1979) (Dead Man's Act did not prohibit the testimony of decedent's daughter's husband regarding an alleged oral contract the daughter had with the decedent to leave her one-half of his estate).

Moreover, this court has previously concluded that the Dead Man's Act only applies to witness testimony and does not apply to documentary evidence, including checks and receipts. *See Larkin v. Metz*, 580 A.2d 1150, 1153 (Pa. Super. 1990) (holding that "the trial court erred when it precluded the receipts and canceled checks offered [] to prove the existence of a contract for the sale of the property between themselves and the decedent.").

In the instant case, the trial court properly applied the Dead Man's Act. *See* Trial Court Opinion at 4-5. The court allowed Terzuolo to proffer checks, the partnership agreement, and other documentary evidence in accordance with *Larkin*, *supra*. *See* N.T. Hearing, 3/3/16, at 8-30. In addition, the accountant, John Paciello, a person with no interest in the outcome of the proceedings, also testified about the tax records and other documentary evidence. *See id*. at 31-62. Contrary to Appellant's contention, the Dead Man's Act does not preclude the admission of

documentary evidence pertaining to the partnership and does not preclude Paciello's testimony.

After a careful review of the certified record and the parties' arguments, we discern no abuse of discretion or misapplication of law and affirm the trial court's May 5, 2016 Order.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2017

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

NO. 2014-X3488

* * * * * *

ESTATE OF WILLIAM P. O'BRIEN, DECEASED
(Late of Conshohocken Borough)

* * * * * *

The First and Final Account of Donna Wellington, Executrix of the Estate of William P. O'Brien, Deceased, was called for audit by this court on November 2, 2015. Objections were filed by Terry Terzuolo on October 20, 2015.[1] A hearing on these Objections was held on March 3, 2016 at which time the Court decided the issue of whether the decedent's estate owes the objectant the amount of $64,905.31 for an erroneous partnership distribution made to the decedent during his lifetime.[2] This matter is now ripe for adjudication.

COUNSEL APPEARED AS FOLLOWS:

VANGROSSI AND RECCHUITI
By: Francis Recchuiti, Esquire
For the Accountant

KRAUT HARRIS, P.C.
By: David Kraut, Esquire
For Objectant, Terry Terzuolo.

The Decedent, William P. O'Brien, died on September 6, 2014, leaving a Will dated

September 9, 2010, which was duly probated by the Register of Wills of Montgomery County on

---

[1] Prior to filing Objections, Terry Terzuolo filed a claim against the Estate of William P. O'Brien on December 3, 2014.
[2] The parties submitted Memoranda of Law to the Honorable Stanley R. Ott regarding the applicability of the Dead Man's Rule. By Order dated January 7, 2016 Judge Ott determined that "the Dead Man's Rule does not bar either documentary evidence or testimony from third parties, including that of Mr. Paciello. Issues of hearsay and privilege are reserved for the time of trial."

THIS DOCUMENT WAS DOCKETED AND SENT ON 05/05/2016

Case# 2014-X3488-17.7 Received at Montgomery County Register of Wills Office on 05/05/2016 2:36 PM, Fee = $0.00



October 7, 2014, at which time the Register granted Letters Testamentary to the Accountant herein.

The Decedent left no surviving spouse. No person qualified for the Family Exemption.

The First and Final Account for this Estate is stated to September 25, 2015. Therein, the Accountant reports receipts of $449,678.06, since decreased by disbursements of $95,591.07 and distributions of $157,350.00 leaving $196,736.99 on hand.

Written notice of the filing of the Account and Audit was given to all persons to whom written notice is required to be given by law and Rules of Court, on September 25, 2015.

All parties having any interest in this Estate are said to be living, of age, and *sui juris*.

The Accountant has raised one issue for adjudication, which relates to the objection of Terry Terzuolo (hereinafter "Ms. Terzuolo" or "Objectant"), namely whether the claim by Ms. Terzuolo, in the amount of $64,905.31 is a valid claim against the Estate. The Accountant maintains it is not. This Court disagrees. A hearing was held March 3, 2016 regarding this issue, particularly whether a partnership distribution resulting from the partnership dissolution in 2013-14 and made to the decedent a few months prior to his death, was improper. This Court heard testimony from two witnesses; the Objectant[3] and John A. Paciello, CPA.

Ms. Terzuolo was a police officer with Upper Merion Township for just under twenty-nine years, having retired in October 2000. NT, 3/3/16, p. 8. Ms. Terzuolo formed a partnership with the decedent, William O'Brien, on January 6, 1997 for the purposes of buying, developing and selling property, real and personal. See, Exhibit P-1, Partnership Agreement. The partnership was named Bri-Ter Developments. John A. Paciello, CPA has been the accountant for this company since its inception.

---

[3] The testimony of Terry Terzuolo was limited to the introduction of documents in order to avoid a violation of the Dean Man's Rule.

2

On December 30, 2013, the partnership liquefied its last asset, a property in Spring City, Pennsylvania. *See,* Exhibit P-2, HUD-1 Settlement Statement; NT, 3/3/16, p. 10-11. The proceeds of $170,858.92 from the sale of this property were deposited into the partnership's checking account. *See,* Exhibit P-2 and P-3; NT, 3/3/16, p. 12. Ms. Terzuolo testified that she maintained the partnership's financial records by hand and did not use a computer. NT, 3/3/16, p. 13, 27. The independent testimony of Mr. Paciello confirmed that Ms. Terzuolo primarily handled the financial operations of the partnership. NT, 3/3/16, p. 31-33. These detailed records would be given to the accountant for the partnership, Mr. Paciello, in order to generate the tax returns. NT, 3/3/16, p. 14-16.

On February 28, 2014, Terry Terzuolo issued two checks from the partnership checking account, each in the amount of $80,000, to herself and the decedent, dividing the proceeds from the sale of the property evenly. *See,* Exhibit P-4 and P-5; NT, 3/3/16, p. 17. The remaining balance in the partnership checking account as of March 3, 2014 was $7,524.30. This distribution of $80,000 to herself and Mr. O'Brien however was in error as the distribution should have been made in accordance with the capital accounts of the two partners and not on a 50/50 basis as was done. Once the capital accounts were reconciled, any remaining profit would be split 50/50. *See,* NT, 3/3/16, p. 42.

At the time the partnership was created, the partnership consisted of $30,000 in capital contributions. Each partner had contributed $8,000, and each were required to contribute an additional $7,000. *See,* Exhibit P-1, paragraph 4. The partnership agreement also required each partner to maintain their own capital account.[4] *Id.* at paragraph 5. Exhibit P-6 is a compilation

---

[4] Accountant John Paciello explained what a capital account is: "Capital accounts begin with the partners' initial contribution of funds in their partnership, and that capital account changes on an ongoing basis. It can increase it the partner contributes additional capital. It can increase if the partnership shows a profit and the partner would be credited with the appropriate percentage of profits, or it could decrease if the partnership shows a loss and the

3

of the partnership's tax returns from 1997 through 2013. A review of these returns details the capital accounts for Terry Terzuolo and William O'Brien for each year. The accountant testified that when a partnership is dissolving and the assets have been liquidated so that the only remaining asset is cash, the disbursement of cash would be equal to the capital accounts, thereby bringing all capital accounts to zero. NT, 3/3/16, p. 34-35.

The evidence established that the 2013 partnership tax return showed a zero balance in both Terry Terzuolo and William O'Brien's capital accounts. *See*, Exhibit P-6, 2013 Return; NT, 3/3/16, p. 37-39. These documents also show that given the disparity between Terzuolo's capital account and O'Brien's capital account, Terzuolo should have received a disbursement of $153,192.00 and O'Brien should have received a disbursement of $15,857.00 as opposed to the $80,000 disbursed to each partner. *Id.* It appears evident to this Court, based on a review of the tax returns of the partnership and the testimony of Mr. Paciello that Mr. O'Brien received a larger disbursement than he was entitled to and he was over paid by the amount of $64,143.00. NT, 3/3/16, p.42; Exhibit P-6.

Mr. O'Brien died on September 6, 2014. Counsel for the Executrix argues that this disbursement discrepancy was discovered in March of 2014, yet repayment was not sought from Mr. O'Brien until after his death sometime in October of 2014. We note the oddity of the timing of this, but a review of Mr. Paciello's independent testimony, which this Court found quite credible, coupled with the tax documents that speak for themselves, quell any concern this Court may have of duplicity on the part of Ms. Terzuolo. Further this Court notes that Ms. Terzuolo was precluded from testifying in Court as to the reasoning behind this delay or with regard to her

---

partner would receive a charge for their share of the loss, decrease in capital. So every year when the tax returns were prepared, we had a beginning balance which would be the ending balance of the prior year for each capital account, and to that was added any capital contributions during the year, and added or subtracted whether there was a profit or a loss during the year. And also could decrease if there was any distributions to the parties during the year. NT, 3/3/16, p. 33-34.

Case# 2014-X3488-17.7 Received at Montgomery County Register of Wills Office on 05/05/2016 2:36 PM, Fee = $0.00

discussions with the decedent about this issue as it would have violated the Dead Man's Rule. Accordingly, this Court **SUSTAINS** the objections of Terry Terzuolo and directs the Executrix of the Estate of William O'Brien to repay the sum of $64,143.00 to the claimant/objectant, Terry Terzuolo.

The Accountant has requested approval of a reserve in the amount of $80,000.00 for litigation expenses and potential liability with regard to the claim of Terry Terzuolo. Due notice of this request was given to all interested persons and no one appeared to object. Accordingly, by this Adjudication, a reserve in the amount of $64,143.00 is granted with regard to Terry Terzuolo's claim and the remaining $15,857.00 is approved as a reserve for litigation expenses related to the hearing on March 3, 2016, as needed. Any unexpended portion of this reserve is to be distributed to the beneficiaries in accordance with the terms of decedent's Will, without the necessity of further accounting.

There are no remaining questions before this Court requiring adjudication.

Subject to the views expressed in this Adjudication, to distributions heretofore properly made, and to any Pennsylvania inheritance transfer tax that may properly be due, the net ascertained balances of principal and income are awarded as set forth in the last paragraph of the Petition for Adjudication.

AND NOW, this       day of May, 2016, the First and Final Account is confirmed subject to the findings of this Court in this Adjudication and it is hereby ORDERED and DECREED that the Executrix forthwith pay the distributions herein awarded.

Exceptions to this Adjudication may be filed within twenty (20) days from the entry of the Adjudication. An appeal from this Adjudication may be taken to the appropriate appellate court within thirty (30) days from the entry of the Adjudication. *See*, Pa. O.C. Rule 7.1, as

Case# 2014-X3488-17.7 Received at Montgomery County Register of Wills Office on 05/05/2016 2:36 PM, Fee = $0.00

5

amended, and Pa.R.A.P. 902 and 903.

BY THE COURT:

_Cheryl L. Austin_
CHERYL L. AUSTIN, J.

Copies of the above e-filed
MAY 5 , 2016

Case# 2014-X3488-17.7 Received at Montgomery County Register of Wills Office on 05/05/2016 2:36 PM, Fee = $0.00

6