J-A18001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: BERNARD L. KLIONSKY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: MATTHEW KLIONSKY, | : | |
| NINA KLIONSKY AND RUTH | : | |
| KLIONSKY | : | |
| | : | |
| | : | |
| | : | No. 65 WDA 2021 |

Appeal from the Order Entered December 16, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 2266 of 2018

BEFORE:  OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                **FILED: NOVEMBER 15, 2021**

Appellants, Matthew Klionsky ("Matthew"), Nina Klionsky ("Nina"), and Ruth Klionsky ("Ruth") (collectively, "Appellants"), appeal from the December 16, 2020 order dismissing their objections and amended objections to the first and final account and petition for adjudication filed by Daniel Klionsky ("Daniel") as agent under a power of attorney for his, and Appellants', father, Bernard L. Klionsky ("Bernard").  We affirm.

This Court previously summarized the factual and procedural history as follows:

> Bernard and his wife had four children: Matthew, Nina, Ruth[,] and Daniel.  Bernard gave Daniel power of attorney in 2012.  During his final years of life, Bernard gave Daniel and his

immediate family $256,000[.00.[1]] Bernard died in 2017, at the age of 92. His wife having predeceased him, Bernard's will provided that his four children were the beneficiaries, in equal amounts, of his residuary estate. Daniel is the executor of the estate.

Appellants commenced this action by filing a petition to require Daniel to file an account of his activity as power of attorney for Bernard. Appellants alleged Daniel had "enriched himself through undue influence," and that he had taken "advantage of his father's weakened intellect, abused his positions of trust and confidence with [Bernard], and improperly converted and/or diverted assets to [his] and his immediate family's benefit." Daniel filed an answer, denying that he had taken advantage of Bernard, and asserting that Bernard had voluntarily given him and his family the gifts after independent consultation with counsel. Daniel also filed an account as power of attorney and a petition for adjudication. Appellants filed objections and amended objections to Daniel's account. Appellants also filed an amended petition, asking the [orphans'] court to "invalidate the *inter vivos* gifts to Daniel and his immediate family that were procured by undue influence and/or deception and have the property returned to [Bernard's] estate." Daniel filed an answer to the amended petition.

*In Re Klionsky*, 240 A.3d 990, at *1 (Pa. Super. 2020) (unpublished memorandum) (extraneous capitalization and record citations omitted).

_____

[1] Appellants objected to the following payments: four payments of $14,000.00 each made to Daniel's daughters (two payments were made on April 13, 2015, and two payments were made on January 8, 2016); six payments of $10,000.00 each made to Daniel's daughters (two payments were made on December 30, 2015, and four payments were made on January 9, 2017); five payments of $14,000.00 each made to Daniel (two payments were made on July 31, 2015, two payments were made on January 8, 2016, and one payment was made on January 9, 2017); and five payments of $14,000.00 each made to Daniel's wife (two payments were made on July 31, 2015, two payments were made on January 8, 2016, and one payment was made on January 9, 2017). *See* Appellants' Amended Objections to Accounting, 11/30/18, at ¶14.

- 2 -

In June 2019, the orphans' court conducted a bench trial and subsequently dismissed Appellants' objections and amended objections to the account filed by Daniel. *Id.* at *1-*2. On appeal, this Court vacated the orphans' court order and remanded the matter to allow the orphans' court to apply the correct standard governing a challenge to an *inter vivos* gift.[2] *Id.* at *3-*4.

Upon remand, the orphans' court found that Daniel satisfied his burden of proving that the *inter vivos* gifts were the free, voluntary, and intelligent acts of Bernard. Orphans' Court Opinion, 12/16/20, at 3 (stating that, Daniel satisfied his burden of proof that "the gifts were made intelligently and of [Bernard's] own free will"). In so finding, the orphans' court dismissed

---

[2] In order to challenge an *inter vivos* gift, the challenger "need only assert that the donor and donee were in a confidential relationship before the burden shifts to the donee to 'prove affirmatively that [the *inter vivo* gift] is unaffected by any taint of undue influence, imposition, or deception.'" *Klionsky*, 240 A.3d at *3, *citing* **McCown v. Fraser**, 192 A. 674, 676 (Pa. 1937).

This Court previously held that,

> the [orphans'] court found a confidential relationship existed because Daniel served as Bernard's financial advisor. After so finding, the [orphans'] court should have shifted the burden to Daniel to prove that Bernard gave him and his family the money intelligently and by his own free will. The [orphans'] court did not do so, and thus it erred.

*Klionsky*, 240 A.3d at *4 (footnote and citation omitted).

Appellants' objections and amended objections. *Id.* at 5. This appeal followed.[3]

Appellants raise the following issues for our review:

[1.] Whether the [orphans'] court erred in finding the evidence sufficient to sustain the gifts under the clear and convincing standard, if that is the standard the [orphans'] court used, without so stating in its opinion?

[2.] Whether the [orphans'] court erred in not stating the evidentiary burden it used to sustain the gifts in question rendering this Court's review impossible, necessitating a remand for the [orphans'] court to re-issue another opinion?

Appellants' Brief at 4.[4]

Preliminarily, we address a contention raised by the Estate of Klionsky ("the Estate"), which was permitted to intervene in the instance case. The Estate claimed that the doctrines of *res judicata* and collateral estoppel precluded Appellants' challenge to the validity of the *inter vivos* gifts.

> *Res judicata*, which is also known as claim preclusion, holds that a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies. The doctrine has application where the following are present: (1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of persons or parties to the actions; and (4) identity of the quality or capacity of the parties suing or sued. All matters which might have been raised and decided in the former suit, as well as those which were

---

[3] Appellants and the orphans' court complied with Pa.R.A.P. 1925. **See** Orphans' Court Order, 3/2/21 (stating that, the orphans' court relies on its December 16, 2020 opinion in lieu of a Rule 1925(a) opinion).

[4] For ease of disposition, Appellants' issues have been reordered.

actually raised therein, are *res adjudicata* in a subsequent proceeding between the same parties and their privies.

***Hopewell Estates, Inc. v. Kent***, 646 A.2d 1192, 1194 (Pa. Super. 1994)

(citations, brackets, and quotation marks omitted).

> [Collateral estoppel,] which is sometimes referred to as issue preclusion, prevents an issue of law or fact from being relitigated after it has been once litigated and finally adjudicated in a court of competent jurisdiction. The doctrine applies when (1) an issue is identical to one which was presented in a prior case; (2) there has been a final judgment on the merits of the issue in the prior case; (3) the party against whom collateral estoppel is asserted was a party in, or in privity with a party in, the prior action; (4) the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. Collateral estoppel applies only to issues which have been actually litigated in a prior action.

***Id.*** at 1195 (citations omitted). "*Res judicata* and collateral estoppel are affirmative defenses which must be pleaded in an answer as new matter. Pa.R.C[iv].P. 1030. A defense not so raised is waived. Pa.R.C[iv].P. 1032." ***Hopewell***, 646 A.2d at 1194.

Here, the Estate concedes that it "raised the issue of *res judicata* and collateral estoppel before the trial court on this matter during the time of trial." Estate's Brief at 11; ***see also Klionsky***, 240 A.3d at *4 n.2 (stating that, the Estate raised the argument that Appellants' claims are barred by *res judicata* and collateral estoppel **in its post-trial submission** to the trial court) (emphasis added). Because the Estate failed to raise the affirmative defenses of *res judicata* and collateral estoppel in an answer to Appellants' objections

and amended objections, these defenses are waived. *See* Pa.R.Civ.P. 1032; *see also Hopewell*, 646 A.2d at 1194.

Appellants' first issue challenges the orphans' court decree for which our standard of review is well-settled.

> When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the [orphans'] court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the orphans' court relied are palpably wrong or clearly inapplicable, we will reverse the orphans' court's decree.

*In re Estate of Hooper*, 80 A.3d 815, 818 (Pa. Super. 2013) (citation and extraneous capitalization omitted), *appeal denied*, 94 A.3d 1009 (Pa. 2014).

As a general principle of law, courts have long-held that *inter vivos* gifts are valid gifts. *McCown*, 192 A. at 676 (stating, [t]he right to dispose of property is an incident of ownership, and a gift is nonetheless valid because it is undeserved or improvident); *see also In re Estate of Clark*, 359 A.2d 777, 781 (Pa. 1976) (stating that, "[w]hen the donee establishes a *prima facie* case of a gift, a rebuttable presumption arises that the gift is valid). "Initially, the burden is on the alleged donee to prove an *inter vivos* gift by clear, precise[,] and convincing evidence." *In re Estate of Cerullo*, 247 A.3d 52, 55 (Pa. Super. 2021). "Essential to the making of a valid gift are donative intent on the part of the donor[,] delivery of the subject matter to the

donee[,]" and "acceptance by the donee." **Wagner v. Wagner**, 353 A.2d 819, 821 and n.5 (Pa. 1976).

Once the donee has established a *prima facie* case of an *inter vivos* gift, a rebuttable presumption arises that the gift is valid, and the burden "is then on the contestant to rebut the presumption by clear, precise[,] and convincing evidence." **Clark**, 359 A.2d at 781. One method by which the contestant can satisfy this burden is by establishing that a confidential relationship existed between the donor and the donee at the time of the gift. **Id.** "A confidential relationship exists as a matter of fact whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence[,] or justifiable trust, on the other." **Id.** (citation, original quotation marks, and ellipsis omitted); **see also Hera v. McCormick**, 625 A.2d 682, 690 (Pa. Super. 1993) (stating, "[a] confidential relationship exists where the circumstances make it certain that the parties did not deal on equal terms; where, on the one side there is an overmastering influence, or on the other, weakness, dependence[,] or trust, justifiably reposed" (citation and original quotation marks omitted)). "For example, a confidential relationship may be established by proof that the alleged donee possessed a power of attorney over a [donor's] assets." **Hera**, 625 A.2d at 691.

"[I]t is well-settled that by showing a confidential relationship between the donor and donee existed at the time of the gift, the burden then shifts to

the donee to show that the gift was free of any taint of undue influence or deception." *Clark*, 359 A.2d at 781; *see also Biddle v. Johnsonbaugh*, 664 A.2d 159, 162 (Pa. Super. 1995) (stating that, "[o]nce a confidential relationship is found to exist, the law presumes the transaction voidable [and] the party seeking to sustain the validity of the transaction must affirmatively demonstrate that the contract or transaction was fair, conscientious[,] and beyond the reach of suspicion" (citations and original quotation marks omitted)); *McCown*, 192 A. at 676 (stating that, "if the [*inter vivos* gift] is questioned, [the donee must] prove affirmatively that it is unaffected by any taint of undue influence, imposition, or deception"); *In re Null's Estate*, 153 A. 137, 139 (Pa. 1930) (stating that, "[w]hen a confidential relation is established, the presumption is that the transaction, if of sufficient importance, is void, and [] donee [has] the burden of proving affirmatively []that no deception was used and the act was the intelligent and understood act of the [donor], fair, conscientious, and beyond the reach of suspicion"). An *inter vivos* gift "will be condemned, even in the absence of evidence of actual fraud, or of mental incapacity on the part of the donor, unless there is full and satisfactory proof that it was the free and intelligent act of the donor, fully explained to [the donor], and done with a knowledge of its consequences." *McCown*, 192 A. at 676-677; *see also Clark*, 359 A.2d at 781 (stating that, to meet this burden, the donee is "required to affirmatively show that the gift was the free, voluntary[,] and intelligent act of" the donor). When the donor and donee are found to be in a confidential relationship, the

donee is "also required to show that he[, or she,] acted with scrupulous fairness and good faith and that he[, or she,] did not abuse the confidence placed in him[, or her, by the donor]." **Clark**, 359 A.2d at 781. "More precisely, the [donee] must prove by clear and convincing evidence that the [*inter vivos* gift] was free, voluntary[,] and an independent act of the [donor], entered into with an understanding and knowledge of its nature, terms[,] and consequences." **Biddle**, 664 A.2d at 162 (citation and original quotation marks omitted).

As our Supreme Court has explained,

"Clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

**In re Novosielski**, 992 A.2d 89, 107 (Pa. 2010) (citation and original brackets omitted).

Here, Appellants contend that the orphans' court failed to set forth the standard of proof it applied in evaluating the evidence and, therefore, "it is impossible [] to determine if the correct standard[ - ]clear and convincing evidence[ - ]was applied in this case." Appellants' Brief at 10. Appellants assert that "[w]ithout [] stating [the standard of proof that was applied], the

- 9 -

[orphans'] court **may have** improperly sustained the gifts in question based upon the lessor preponderance of the evidence standard.[5] **Id.** (emphasis added). Appellants argue that, if the orphans' court applied the clear and convincing evidence standard, there was no evidence of record demonstrating Bernard's state of mind when the gifts were given. Rather, there is only conjecture, guess, and suspicion that the gifts were the free, voluntary, and intelligent acts of Bernard. **Id.** at 12-13.

_____

[5] Appellants' second issue concerning the orphans' court's failure to explicitly state in its opinion and order that it applied a "clear and convincing evidence" standard in evaluating the evidence and in reaching its conclusion is without merit. The orphans' court correctly noted that, because of the confidential relationship between Bernard and Daniel, Daniel was required to "**affirmatively show** that the gift was the free, voluntary[,] and intelligent act of [Bernard]." Orphans' Court Opinion, 12/16/20, at 3 (emphasis added). Our review of relevant case law, _supra_, demonstrates that the term "affirmatively show" is equivalent in this legal context to the "clear and convincing evidence" standard. **See In re Null's Estate**, 153 A. at 139 (stating the standard as "proving affirmatively"); **see also McCown**, 192 A. at 677 (stating the standard as "full and satisfactory proof"); **Clark**, 359 A.2d at 781 (stating the standard as "affirmatively show"); **Biddle**, 664 A.2d at 162 (stating the standard as "affirmatively demonstrate" or "[m]ore precisely [as] clear and convincing evidence"); **Cerullo**, 247 A.3d at 55 (stating forth the standard as "clear, precise[,] and convincing evidence"). An orphans' court is presumed to know the law and apply the correct standard in its analysis, and the use of certain words, _i.e._, "clear and convincing evidence" is not required, provided this Court is able to discern the standard applied, as is the case here. **See Walsh v. BASF Corp.**, 234 A.3d 446, 464 (Pa. 2021) (stating that, use of "magic language" is unnecessary to determine that the appropriate standard was applied); **see also Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014) (stating that, an orphans' court, acting as the fact-finder, is presumed to know the law).

Daniel asserts that this Court's prior decision placed the burden on him to affirmatively show that the gifts were the free, voluntary, and intelligent acts of Bernard, and the orphans' court adhered to this Court's instructions in evaluating the evidence. Daniel's Brief at 22. Daniel argues that he put forth evidence that the gifts were given as compensation for his, and his family's, years of service to Bernard and that Appellants, after being notified of Bernard's intent to provide the gifts as compensation, acknowledged that compensation was appropriate. *Id.* at 23. Daniel contends that the "gift-giving" process was handled by Bernard's then-attorney[6] and that Bernard consulted with his attorney and his accountant prior to providing the gifts. *Id.* at 23-24. This evidence, Daniel asserts, demonstrates affirmatively that the gifts were the free, voluntary, and intelligent acts of Bernard, and Appellants put forth no rebuttal evidence demonstrating that the gifts were the result of undue influence and coercion. *Id.* at 24.

Based upon the testimony and evidence, which it found credible, the orphans' court summarized its factual findings, as follows:

> [Daniel] was [Bernard's] financial advisor. Prior to [the] deaths [of Bernard and his wife (Daniel's and Appellants' mother)], Daniel, [and his family,] provided almost daily care for his parents, both physically and emotionally.
>
> Daniel undertook a limited number of transactions as an agent under [Bernard's] power of attorney[.] Rather, when he paid bills

---

[6] Bernard's attorney subsequently passed away in November 2016.

for [Bernard], he used a checking account [] that was jointly owned by Daniel and [Bernard].

[Bernard and his wife] consulted with their then-[attorney] about compensating Daniel, who provided daily assistance to them. [Bernard's attorney] sent a letter to [Appellants] dated March 11, 2015, in which he discussed providing compensation to Daniel and his family for their extensive efforts in caring for [Bernard and his wife. Appellants] sent an email to Daniel on April 14, 2015, in which they acknowledged that Daniel and his family were expending significant time caring for their parents. In an email to [Appellants] dated April 30, 2015, Daniel suggested how he could be compensated for the duties that he performed for their parents.

[Bernard's] accountant attended two meetings at [Bernard's] residence. The meetings, which were held on July 6, 2015[,] and July 29, 2015, were convened at the suggestion of [Bernard's attorney], who was present, along with [Bernard and his wife]. During these discussions in 2015, [Bernard] was "very engaged" in the discussions and [the accountant] did not have any concerns about his competency. At the [July 29, 2015] meeting, [Bernard and his wife] decided the amount of the gifts to be made to Daniel and his [family]. *Via* checks written by [Bernard], Daniel and his wife received gifts in the amount of $56,000[.00] from [Bernard and his wife] in 2015 and the same amount in 2016. Daniel and his wife received total gifts of $28,000[.00] from [Bernard] in 2017[.] Daniel's four daughters received total gifts of $116,000[.00] from [Bernard and his wife] in 2015 through 2017.

Orphans' Court Opinion, 12/16/20, at 2-3 (extraneous capitalization and record citations omitted). In dismissing Appellants' objections and amended objections, the orphans' court stated,

[Appellants] made the assertion that Daniel and [Bernard] had a confidential relationship. The [orphans'] court agreed with this assertion and found that Daniel and [Bernard] had a confidential relationship because Daniel was his financial advisor. After so finding, Daniel [was required to] prove that the gifts were made intelligently and of [Bernard's] own free will. The [orphans'] court finds that Daniel has met his burden of proof for the following reasons:

First, [Bernard and his wife] made the gifts as a form of compensation for the many hours that Daniel, his wife, and [their] daughters spent caring for [Bernard and his wife] prior to their deaths. Daniel and his wife provided numerous services to [Bernard] and his wife, including arranging for caregivers, making and attending doctor's appointments, maintaining their residence, [and] shopping and food preparation[.] If Daniel and his wife had not provided these services, [Bernard] and his wife would have been forced to hire full-time caregivers to assist them with their daily living tasks, which very easily could have cost more than $250,000[.00] over almost three years.

Second, [Bernard and his wife] consulted with [their] then-attorney [] prior to making any gifts. [Their attorney] contacted [Appellants] in writing indicating that [Bernard and his wife] wanted to compensate Daniel and his family. [Appellants] even acknowledged to Daniel that he was entitled to be compensated.

Third, [Bernard's and his wife's] accountant attended two meetings, which included [Bernard's and his wife's attorney], in the summer of 2015[,] in the Klionsky home. During the second meeting, [Bernard and his wife] decided on the amount of the gifts and [Bernard] wrote the checks to Daniel, his wife, and [their] daughters in 2015, 2016, and 2017.

*Id.* at 3-4 (extraneous capitalization omitted).

The record demonstrates that Bernard's accountant recalled attending private meetings on July 6, 2015, and July 29, 2015, at which Bernard, his wife, and Bernard's attorney were present.[7] N.T., 6/27/19, at 185, 188-189.[8] The accountant testified that, at both meetings, a discussion occurred between

_____

[7] The accountant stated that a caregiver was present at the July 6, 2015 meeting but that she was "in another room." N.T., 6/27/19, at 182.

[8] A hearing on this matter was held on June 26, 2019, and June 27, 2019. The notes of testimony covering both days of the hearing are consecutively paginated. For ease of discussion, we note the exact date of the hearing on which the testimony occurred.

the parties concerning how to compensate Daniel and his wife for the efforts they provided in caring for Bernard and his wife. *Id.* at 185, 190-191. During these meetings, the accountant stated that she informed Bernard and his wife that "if a gift was to be given, [a donor is] allowed by tax law to give [] $14,000[.00], which is the amount that does not require a gift tax return[.]" *Id.* at 185-186; *see also id.* at 191 (stating, "by tax law, [a donor is] allowed to give a person $14,000[.00] as a gift without filing a tax return for gift tax purposes"). When asked if Bernard understood the discussions, the accountant replied that Bernard understood and engaged in the discussions by asking questions and reviewing the matter of compensation intently. *Id.* at 186, 191.

After the second private meeting, Bernard and his wife each made a gift in the amount of $14,000.00 to Daniel and the same to his wife, for an aggregate gift of $56,000.00 on July 31, 2015. The same gifts were made on January 1, 2016. After the passing of Bernard's wife in July 2016, Bernard made gifts to both Daniel and his wife each in the amount of $14,000.00 on January 9, 2017.

Matthew testified that the signatures on the checks appeared to be that of Bernard and that he did not have reason to believe that Daniel signed the checks using Bernard's name. N.T., 6/26/19, at 150. Matthew acknowledged that the checks were given to Daniel and his wife after Bernard consulted with his attorney. *Id.* at 154. Matthew stated that he was aware that, prior to writing the checks, Bernard consulted with his attorney about ways to

compensate Daniel and his wife for their efforts in taking care of and assisting Bernard and his wife. *Id.* at 154-156 and Exhibit D. On April 14, 2015, Appellants acknowledged the efforts put forth by Daniel and his wife regarding the care provided, stating they "appreciate[d] the incredible 'boots on the ground,' physically and emotionally difficult, and time-consuming work that you are doing." *Id.* at Exhibit E. Appellants stated that Daniel and his wife should receive compensation "in the present rather than out of the estate in the future" and stated that compensation at the rate of $30.00 per hour was "too low" and that collectively they felt the parties could "come up with something that [was] fair." *Id.* In response, Daniel proposed a rate of $50.00 per hour and calculated that, based on an estimate of the number of hours spent caring for Bernard and his wife, the total compensation would be $56,210.00 annually.[9] *Id.* at Exhibit 7.

Based upon our review of the record, we discern no abuse of discretion or error of law in the orphans' court's determination that Daniel satisfied his burden, by clear and convincing evidence, that the gifts were the free, voluntary, and intelligent acts of Bernard. The gifts fit squarely within the gift exclusionary provisions for tax purposes and are rationally related to providing compensation to those individuals who cared for both Bernard and his wife.

---

[9] Daniel proposed a prevailing market rate for care services of $100.00 per hour but reduced his proposed rate to $50.00 per hour, stating that 50% of his efforts were done as a caretaker and 50% of his efforts were provided as a "labor of love" to his parents. N.T., 6/26/19, at Exhibit 7.

The accountant testified that prior to making the gifts, Bernard actively engaged in a discussion concerning the gifts and that he understood the purpose of the gifts and the ramifications of the gifts, including the tax consequences. Therefore, Appellants' issue is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2021